Florence M. STROM, Appellant,

v.

MEMORIAL HERMANN HOSPITAL SYSTEM d/b/a Memorial Hospital Southwest and Memorial Hospital System, and Dr. Henry Blum, Individually and d/b/a Sugar Land Orthopedic Associates, P.A., Appellees.

No. 01–01–00756–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 29, 2003.

John H. Holloway, Houston, for Appellant.

Sam A. Houston, Cruse, Scott, Henderson & Allen, Solace H. Kirkland, Andrews & Kurth, David W. Hodges, Mayor, Day, Caldwell & Keeton, L.L.P., Houston, for Appellee.

Panel consists of Justices TAFT, HANKS,* and MIRABAL.**

---

* This case was originally submitted to a panel consisting of Justices Taft, Mirabal, and retired Justice Jackson B. Smith, Jr. Upon Justice Smith's recusal, Justice George C. Hanks, Jr., who was appointed to this Court on December 31, 2002, is participating by assignment.

** The Honorable Margaret Garner Mirabal, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## OPINION

TIM TAFT, Justice.

Appellant, Florence M. Strom, filed health-care liability claims against appellees, Memorial Hermann Hospital System d/b/a Memorial Hospital Southwest and Memorial Hospital System (the hospital) and Dr. Henry Blum, individually and d/b/a Sugar Land Orthopedic Associates (Dr. Blum). Strom appeals to challenge orders that dismissed those claims, with prejudice, on the grounds that the expert reports she provided to support those claims under section 13.01(d) of article 4590i, the Medial Liability and Insurance Improvement Act, did not comply with section 13.01(r)(6) of that statute.[1] We address (1) whether Strom's expert reports constituted a fair summary of the standard of care required by Dr. Blum and the Hospital, (2) whether the trial court erred by refusing to grant Strom an extension of time to amend her expert reports, (3) whether Dr. Blum waived his challenge to the adequacy of Strom's expert reports by not asserting the challenge until 180 days after Strom filed suit, (4) whether the trial court erred in awarding $5,000 in attorney's fees to the hospital, (5) the constitutionality of article 4590i, section 13.01(d), and (6) whether the trial court erred in dismissing Strom's claims of fraud, intentional and fraudulent misrepresentations, and "unnecessary surgery" against Dr. Blum. We affirm.

## Background

Strom sued the hospital claiming that hospital surgical nursing staff improperly positioned her in preparation for neck surgery performed at the hospital October 4, 1996, and caused injury to her left knee. Strom also sued Dr. Blum, an orthopedic surgeon who later treated the left knee and performed a total knee replacement, claiming he was negligent and grossly negligent because the surgery was unnecessary. Strom sued the hospital in October 1998 and sued Dr. Blum a year later.

On April 25, 2001, the hospital moved the trial court to either dismiss Strom's case against the hospital or require her to file a cost bond, on the grounds she had missed the 90–day and the 180–day requirements of article 4590i, section 13.01 by not filing expert reports in compliance with that statute. See Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(a), (d), (e)(3) (Vernon Supp.2003). With respect to the 180–day requirement, the hospital acknowledged that Strom had provided expert reports in attempted compliance with section 13.01(d),[2] but argued that the reports were "insufficient as a matter of law" under section 13.01(r)(6) because they did not provide a "fair summary" of the applicable standard of care, how it was breached, or the causal relationship between the alleged breach and Strom's injuries, as required by that section. See Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d), (r)(6) (Vernon Supp.2003). The hospital also requested attorney's fees, as authorized by section 13.01(e)(1). See Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(e)(1) (Vernon Supp. 2003). After conducting a hearing on May 14, 2001, the trial court dismissed Strom's claims against the hospital, with prejudice, and awarded the hospital $5,000 in attorney's fees and costs.

1. See Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d), (r)(6) (Vernon Supp.2003).

2. Strom provided her experts' reports to counsel for the hospital on April 1, 1999. It is undisputed that the experts' reports were timely by agreement of counsel signed in accordance with rule 11 of the Rules of Civil Procedure and as authorized by section 13.01(h) of article 4590i. See Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(h) (Vernon Supp.2003); Tex.R. Civ. P. 11.

Four days later, on May 18, 2001, Dr. Blum filed a similar motion to dismiss. The trial court granted this motion and dismissed Strom's claims against Dr. Blum in an order signed on August 18, 2001. This order recites that the trial court considered Strom's counsel's sworn testimony, and also reflects the trial court's findings and conclusions in granting relief.

### Standard of Review

■ The abuse-of-discretion standard governs all article 4590i, section 13.01 rulings. *American Transitional Care Ctrs. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001); *De Leon v. Vela,* 70 S.W.3d 194, 197 (Tex. App.-San Antonio 2001, pet. denied). This standard inquires whether the trial court acted without reference to any guiding rules or principles. *Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999); *Mueller v. Beamalloy, Inc.,* 994 S.W.2d 855, 858 (Tex. App.-Houston [1st Dist] 1999, no pet.). We may not reverse a discretionary decision simply because we might have reached a different one. *Mueller,* 994 S.W.2d at 858. When resolving factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992).

■ Dismissals with prejudice for lack of compliance with section 13.01 of article 4590i are sanctions. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(e) (Vernon Supp. 2003) ("... [T]he court shall, on the motion of the affected physician or health care provider, enter an order awarding as sanctions...."); *Palacios,* 46 S.W.3d at 877. In contrast to findings entered in support of a judgment after a bench trial under rule 296 of the Rules of Civil Procedure, findings entered in support of a sanction dismissing a cause, as entered here in the order granting Dr. Blum's motion, are

not binding on the reviewing court, although they are "helpful" in determining whether the trial court exercised its discretion in a reasonable and principled manner. *See IKB Indus., Ltd. v. Pro-Line Corp.,* 938 S.W.2d 440, 442 (Tex.1997) (appeal from dismissal as a sanction); *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 852 (Tex.1992) (mandamus review of dismissal as a sanction).

### Dismissals with Prejudice for Insufficient Reports

Strom's first four points of error challenge dismissal of her claims against Dr. Blum as an abuse of discretion. In points of error five through seven, Strom challenges the dismissal against the hospital on the same grounds.

All health-care liability claims must comply with section 13.01(d) of article 4590i. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon Supp.2003). Section 13.01(d) requires that a plaintiff asserting a health-care liability claim must, not later than 180 days after filing suit, either: (1) furnish an expert report, with supporting curriculum vitae, to counsel for each defending physician or health-care provider; or (2) voluntarily nonsuit the claim. Tex. Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon Supp.2003). Article 4590i defines "expert report" as a written report that:

provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(r)(6) (Vernon Supp.2003).

Section 13.01 acknowledges that medical-malpractice cases require expert testi-

mony and the statute was enacted to curtail frivolous lawsuits. *See Palacios,* 46 S.W.3d at 877; *Hart v. Wright,* 16 S.W.3d 872, 876 (Tex.App.-Fort Worth 2000, pet. denied). If the plaintiff does not comply with section 13.01(d), and the defendant seeks sanctions pursuant to section 13.01(e), the trial court must grant the relief authorized by that section, as follows: dismiss the claim against that defendant with prejudice; award costs and attorney's fees to that defendant; and require that any bond filed under section 13.01 be forfeited to pay that award. TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.01(e)(1)-(3) (Vernon Supp.2003); *Palacios,* 46 S.W.3d at 877; *see also* TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01(*l*) (Vernon Supp.2003) ("A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of this section."); *In re Collom & Carney Clinic Ass'n,* 62 S.W.3d 924, 928 (Tex.App.-Texarkana 2001, orig. proceeding) (holding that, because noncompliance with section 13.01(d) mandates dismissal with prejudice, trial court had no discretion to grant extension of time to comply; granting mandamus relief to compel dismissal).

In assessing an expert report for compliance with sections 13.01(d) and (r)(6) on a defendant's section 13.01(e) motion, the dispositive inquiry is whether the report "represents a good-faith effort" to comply with section 13.01(r)(6). *See Palacios,* 46 S.W.3d at 878 (citing TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01(r)(6)). Because section 13.01 focuses on the report, the only information relevant to this inquiry lies within the four corners of the report. *Id.* The trial court may not look beyond the report, therefore, in determining compliance with the statute. *Id.*

The report need not marshal all the plaintiff's proof or meet the requirements for evidence offered to support a summary judgment or at trial. *Palacios,* 46 S.W.3d at 878–79. The report must, however, include the expert's opinion on each of the elements defined by section 13.01(r)(6), specifically, the standards of care, how the defendant breached those standards, and the causal relationship between the breach and the plaintiff's injury. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(r)(6). In setting out these elements, the report must: (1) inform the defendant of the specific conduct called into question by the plaintiff's claims and (2) provide a basis from which the trial court may conclude the claims have merit. *See Palacios,* 46 S.W.3d at 879 (citing *Palacios v. American Transitional Care Ctrs.,* 4 S.W.3d 857, 865 (Tex.App.-Houston [1st Dist.] 1999), *rev'd,* 46 S.W.3d 873 (Tex. 2001) (Taft, J., dissenting)). A report that merely states the expert's conclusions about the standard of care, breach, and causation falls short of accomplishing these two purposes. *Palacios,* 46 S.W.3d at 879. When the expert report provided in attempted compliance with sections 13.01(d) and (r)(6) contains conclusory statements that do not alert the trial court or the defendant to the conduct the plaintiff complains of, section 13.01(*l*) affords the trial court no discretion but to conclude that the report does not represent the "good-faith effort," under section 13.01(*l*), to provide "a fair summary" of the three elements required by section 13.01(r)(6), and no discretion but to dismiss the cause as a sanction, as provided by section 13.01(e). *Palacios,* 46 S.W.3d at 880.

Strom contends that the requirement of providing a "fair summary" is akin to providing "fair notice" in pleadings pur-

suant to rule 47 of the Texas Rules of Civil Procedure. *See* TEX.R. CIV. P. 47. It is apparent, however, from the cases Strom cites that the *Palacios* standard for making a good-faith effort to provide a fair summary of the expert's opinions as to the elements of standard of care, breach, and causation is higher than the "fair notice" requirement of rule 47.

 Standard of care, the first element required by section 13.01(r)(6) for health-care liability claims, is defined by what an ordinarily prudent health-care provider or physician would have done under the same or similar circumstances. *Palacios,* 46 S.W.3d at 880. Whether a defendant breached the standard of care due a patient cannot be determined without "specific information about what the defendant should have done differently." *See id.* ("While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given.") (quoting from *Palacios,* 4 S.W.3d at 865 (Taft, J., dissenting)).

## A. Standard of Care—Dr. Blum

Regarding Dr. Blum, Strom relies upon the following excerpts from the reports of Doctors Robert A. Callewart and George W. Sibley:

### Dr. Callewart's Report

I have reviewed the medical records furnished in the case of Myrna Strom. . . . In February of 1997, she was seen by Dr. Henry Blum, an orthopedic surgeon, with her chief complaint involving her left knee. X-rays showed degenerative changes with medial joint space narrowing and some calcification in the notch, and his impression of torn medial maniscus and chondromalacia. Again, he reports that she had no prior history of knee related complaints prior to surgery in question [neck surgery when the patient suffered a knee injury due to improper positioning by the operating room nurses]. Dr. Blum performed the manisectomy on February 12, 1997. On March 3, 1997, it is reported that she is doing fantastic after surgery. However, on April 19, 1997, Dr. Blum indicates the patient needs a total knee replacement, and on July 28, 1997, reports that she is scheduled for a total knee replacement on August 1, 1997. The total knee and carpal tunnel release were performed by Dr. Blum on August 1, 1997. . . .

**Based upon the records, it is my expert opinion that the total knee and carpal tunnel release were not medically indicated.** There is no justification or very clear indication in the chart for the surgery. There is some suggestion she had severe arthritis in the knee; however, this is not consistent with what was reported in the knee at the time of the prior surgery [manisectomy by Dr. Blum] or other evaluations of the knee. If she had severe degenerative joint disease, this could not have occurred in several months time frame from when she had the surgery of the neck or from the time of the February 12, 1997, surgery [manisectomy by Dr. Blum].

**Based upon a reasonable medical probability, the records indicate no medical basis of [sic] reason for the total knee replacement in a woman in her middle 50's who weighs 240 lbs, who had reportedly a normal knee prior to the operative room injury.** *The surgery would therefore violate the standards of care which would be expected to be exercised by a reasonable and prudent orthopedic surgeon under the same or similar circumstances, and gross negligence to submit such a patient to an unnecessary surgery.*

### Dr. Sibley's Report

Based upon the medical records, the surgery of 8/1/97 [total knee and carpal tunnel syndrome surgeries] was not indicated medically. **This apparently was unnecessary surgery. The medical records do not contain adequate indications for the surgery performed on 8/1/97. A markedly obese 52–year–old lady with a short right leg is not a candidate one would expect to have a good result from a total knee replacement. The diagnosis of carpal tunnel syndrome seems to be inadequate grounds to justify the surgery of 8/1/97.** *The surgeries of 8/1/97 to the knee and to the wrist were unnecessary.*

(Emphases added by Strom's brief for both reports.)

■ Examining the two reports for a showing of what an ordinarily prudent physician would have done under the same or similar circumstances, there simply is no statement of the standard of care. *See Palacios,* 46 S.W.3d at 880. To the extent that the reports state what an ordinarily prudent physician would not have done, i.e., what Dr. Blum did, the reports are addressing a breach of the standard of care rather than the applicable standard of care itself. Because the reports fail to provide an adequate statement of the standard of care, it is unnecessary to examine further whether they fulfill the other two requirements for expert reports pursuant to article 4590i, section 13.01(r)(6). *See De Leon v. Vela,* 70 S.W.3d at 199.

Accordingly, we overrule Strom's first four points of error.

### B. Standard of Care—The Hospital

Regarding the Hospital, Strom relies upon the following excerpts from the reports of Doctors Sibley and Callewart:

### Dr. Sibley's Report

On 10/4/96, Dr. Berry operated on Florence and decompressed the C7–T1 area. He noted that postoperatively, the patient for the first time complained of her left knee.

On 11/1/96, an MRI of the left knee showed a tear of the posterior horn of the medial meniscus. Dr. Staewen examined her and made the diagnosis of the dislocated patella on the left with mild sprain of the lateral collateral ligament. The medical records suggest that the patient, while being strapped in the prone position for a posterior cervical operative procedure on 10/4/96, was placed in an untoward position. The result was injury of the left knee. . . .

On 2/3/97, Florence saw Dr. Blum complaining of her left knee. . . .

On 2/12/97 Dr. Blum did arthroscopic surgery of the left knee and did a partial medial meniscectomy and chondroplasty of the left knee. . . .

**CONCLUSION: Based upon the medical records, it appears that the patient went into the operation of 10/4/96 without complaints of her left knee and came out of the surgery with complaints of the left knee. It is also noted that the patient had a short right leg and degenerative disease of the left knee prior to the 10/4/96 surgery. Based on the medical records, the patient's left knee was negligently injured while under anesthesia when she was moved from the supine position on the gurney to the prone position on the operating table (a twisting injury) and/or when she was placed on the operating table with the left knee inadequately padded.**

### Dr. Callewart's Report

On May [2]8, 1996, Dr. Cech performed what is described as inferior L4 and superior L5 hemilaminectomies, bilateral

L4–5 medial facetectomies and foraminotomies with decompression of the L4/L5 nerve roots and thecal sac. The patient complained of continuing problems post-operatively; however, in a report dated July 8, 1996, she denied any trouble with pain in the lower extremities. Based upon evaluation by MRI, x-ray, and a cervical myelogram in August and September 1996, Dr. John Berry suggested a cervical decompression bilaterally of C7–T1, and possibly re-explore C5–6 bilaterally. This surgery was performed on October 4, 1996, at the Memorial Hospital Southwest in Houston, Texas. **This surgery resulted in the patient sustaining an acute traumatic injury in the patient's left knee/leg; the patient being presumably in a sitting position. The patient suffered immediate pain and swelling of the knee postoperatively, with difficulty in walking.**

On October 23, 1996, it is reported that the patient complains of left knee pain and hobbling on the left knee, which is swollen, with decreased range of motion and tenderness. A MRI of the left knee on November 1, 1996, showed a horizontal tear through the posterior horn of the medial meniscus, extending to the inferior articular surface near the free edge, and a small interior surface tear of the medial meniscus at the junction of the posterior horn and body segment, and a grade I medial collateral ligament sprain.

The knee injuries described in the MRI do not occur when the customary and usual standards of care are exercised in the positioning and strapping a patient on the operative table. However, the injuries can occur when the hospital's operating room personnel fail to take necessary precautions to pad and avoid the placement of the leg/knee in an abnormal position by strapping the patient to prevent movement during surgery. It is my expert opinion, based upon a reasonable medical probability, that the knee injuries suffered by the patient were due to the failure of the operating room personnel to exercise ordinary care, or negligence of the operating room personnel, in placing and maintaining her position on the operating room table. On a follow up of her knee pain January 8, 1997, it was noted that 'apparently during her recent surgery, her knees were taped in an untoward position, resulting in some problems. Difficult to know exactly what, but it is felt that she has some cartilage torn in the left knee.'

(Emphases added by Strom's brief for both reports.) ·

██ Although the above reports mention that Strom's knee injury does not normally occur when the usual standards of care are exercised, and even note that the left knee must not have been properly positioned or padded, the reports nevertheless fail to set out the applicable standard of care. *See Palacios,* 46 S.W.3d at 880. Once again, the most that can be said is that the reports address a breach of the standard of care by not properly positioning or padding the leg and knee. Moreover, the reports are conclusory regarding causation, by failing to set out the manner in which a failure to properly pad and position the leg and knee resulted in Strom's knee injury.

Accordingly, we overrule Strom's fifth through seventh points of error.

### Failure to Grant Additional Time to File Complying Expert Report

In points of error eight through ten, Strom contends the trial court abused its discretion by refusing to grant her an additional 30 days to either amend the re-

ports of her experts, Drs. Sibley and Callewart, or permit Strom to file their depositions as supplements to their reports. Strom relies on section 13.01(g) of article 4590i, which provides as follows:

> Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(g) (Vernon Supp.2003).

▪▪▪ The record contains two requests by Strom for additional time. The first request appears in the concluding paragraphs of Strom's response to the hospital's motion to dismiss. This request refers to possible secretarial or post-office error and appears to presume that the hospital was contending Strom did not furnish the reports on a timely basis, as well as moving to dismiss pursuant to section 13.01(e)(3) because the reports were insufficient. Citing section 13.01(h) of article 4590i,[3] which authorizes agreements of counsel to extend the deadlines of sections 13.01(a) or (d), Strom's counsel provided an affidavit documenting his and the hospital's February 10, 1999 rule 11 agreement to extend the deadline to provide an expert report an additional day, to April 1, 1999. The affidavit also documented Strom's counsel's instructions to his support staff in accordance with that agreement. Noth-

ing in the record suggests that the hospital was disputing timeliness of receipt. Rather, the record shows that, in contending Strom had not complied on a timely basis, the hospital had taken the position that Strom had not provided complying expert reports by the 180–day deadline, which had therefore expired. Moreover, in later documents filed with the trial court, Strom's counsel referred to his timely compliance with the agreed, extended deadline as "undisputed." Thus, there was no basis on which to invoke section 13.01(h).

Strom also cited section 13.0 *2* (g) of article 4590i in support of her first request for additional time. Section 13.0 *2* (g) does not pertain, however, to expert reports. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.02(g) (Vernon Supp.2003). Strom may have mistakenly cited section 13.0 *2* (g) instead of section 13.0 *1* (g), on which she relies in her brief to this Court. But the "accident or mistake" documented in the affidavit supporting Strom's first request refers only to Strom's having erroneously presumed, as we have just addressed, that the hospital did not receive Strom's reports by the agreed, extended deadline. The first request does not refer to the "accident or mistake" on which Strom later relied and on which she relies in this appeal.

Strom's second request for additional time appears in her June 15, 2001 motion for rehearing of the trial court's May 24, 2001 order dismissing her case against the hospital, with prejudice. In addition to claiming that her expert reports complied with section 13.01 of article 4590i, Strom alternatively requested that the trial court "extend the time to file or furnish an amended report or the depositions of Dr. Sibley and Dr. Callewart as an amendment

---

3. TEX.REV.CIV STAT. ANN. art. 4590i, § 13.01(h) (Vernon Supp.2003)

to the prior reports." Strom again cited section 13.01(h) of article 4590i, governing agreements of counsel to extend preliminary deadlines for filing expert reports. Section 13.01(h) does not apply to relief requested of a court.

Strom again cited "accident or mistake" in her second request, but asserted reasons that differed from her first request. Here, Strom clearly invoked the provisions of section 13.01(g) of article 4590i by asserting that her failure to comply with section 13.01(d) was neither intentional nor the result of conscious indifference, but the result of accident or mistake. *See* TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.01(g). Strom's claim of "accident or mistake" is premised on her attorney's sworn affidavit attesting to his "reasonable belief" that the expert reports he provided complied with article 4590i. Strom reasserts that contention on appeal.

To comply with section 13.01(g), however, Strom had to file her request for additional time before any hearing on a defendant's motion to dismiss under section 13.01(e). *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(g); *see also Jackson v. Reardon*, 14 S.W.3d 816, 819 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (holding that trial court did not abuse its discretion by denying motion, which sought additional time to file section 13.01(d) expert report, but was filed after hearing on section 13.01(e) motion to dismiss). Here, Strom did not request additional time to comply with section 13.01(d) on the grounds she raises in this appeal until after the hearing on the hospital's motion to dismiss. Accordingly, her request was not timely.

Because Strom's request for additional time was not timely, the trial court did not abuse its discretion by refusing to grant relief. We need not address, therefore, whether Strom's counsel's "reasonable belief," that the expert reports provided to support Strom's claims complied with sections 13.01(d) and (r)(6) of article 4590i, constituted "accident or mistake" that warranted granting additional time to comply.

We overrule points of error eight through ten.

### Deadline to Challenge Expert Reports

■ In point of error 11, Strom contends Dr. Blum waived his right to challenge Strom's expert reports by waiting until 180 days after Strom filed suit. Strom maintains that Dr. Blum had the reports and was aware of their contents, but "sat on his hands" and waited until after the last possible date for Strom to provide a complying expert report. Article 4590i imposes no deadline for challenging an expert report under section 13.01(d). *See Gonzalez v. El Paso Hosp. Dist.*, 68 S.W.3d 712, 717 (Tex.App.-El Paso 2001, no pet.); *Chisholm v. Maron*, 63 S.W.3d 903, 908 (Tex.App.-Amarillo 2001, no pet.); *Hargrove v. Denno*, 40 S.W.3d 714, 716 (Tex.App.-San Antonio 2001, no pet.).

Accordingly, we overrule point of error 11.

### Award of Attorney's Fees to Hospital

■ In point of error 12, Strom contends that the trial court abused its discretion in awarding the Hospital $5,000 for attorney's fees without evidence to support the claim. Strom also argues that she was entitled to a jury trial on the issue of reasonable attorney's fees.

Article 4590i, section 13.01(e)(1) provides that the trial court shall award reasonable attorney's fees as a sanction for a plaintiff's failure to comply with the requirements of section 13.01(d). TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(e)(1) (Vernon Supp.2003). By providing that the trial court assess the sanction, the plain lan-

guage of the statute does not contemplate that a jury determine what is reasonable as attorney's fees. Strom does not provide any authority that would permit the jury to determine this issue.

 In contending that no evidence supported the trial court's award of attorney's fees, Strom ignores affidavit testimony that $7,500 represented a reasonable award of attorney's fees in this case. This suggested fee was $2,500 more than the amount the trial court actually awarded. In disputing the evidentiary support for the award of attorney's fees, Strom appears to argue that something more than an affidavit is required, but again offers no authority to support that contention.

We hold that the trial court did not err by awarding attorney's fees without convening a jury or requiring testimony beyond proof by affidavit. Accordingly, we overrule point of error 12.

### Constitutional Challenges to Section 13.01

In two points of error 13, Strom contends that (1) the dismissal of her suit with prejudice violates her state and federal constitutional guarantees of due process of law, equal protection of the law, and right to a jury trial; and (2) the trial court abused its discretion in dismissing Strom's claims for fraud, intentional and fraudulent misrepresentations, and "unnecessary surgery" because these causes of action are not issues relating to a "medical standard" under article 4590i.

 Strom correctly asserts that article 4590i places a heavy burden on medical malpractice plaintiffs to comply with very specific requirements and that the sanction for failing to comply is severe, but neither violates constitutional guarantees. *See Schorp v. Baptist Mem'l Health Sys.,* 5

S.W.3d 727, 737–38 (Tex.App.-San Antonio 1999, no pet.); *McGlothlin v. Cullington,* 989 S.W.2d 449, 452–53 (Tex.App.-Austin 1999, pet. denied).

 As for Strom's contention that her claims exceeded the scope of article 4590i, settled law compels that all claims for medical negligence be brought under article 4590i. Strom's attempt to recast her claims of negligence in advising her of the necessity of surgery as fraud and intentional and fraudulent misrepresentations regarding unnecessary surgery do not remove those claims from article 4590i. *See Gomez v. Matey,* 55 S.W.3d 732, 735 (Tex. App.-Corpus Christi 2001, no pet.) (holding claims of fraud and misrepresentation regarding unnecessary surgery fell within scope of article 4590i).

Accordingly, we overrule both of Strom's points of error thirteen.

### Conclusion

We affirm the judgment of the trial court. We deny all pending motions.

Justice MARGARET GARNER MIRABAL, dissenting.

MARGARET GARNER MIRABAL, Justice, dissenting.

In my opinion, the timely-filed expert report of Dr. Robert A. Callewart, M.D., represents a good faith effort to comply with the definition of an expert report in Subsection (r)(6) of the Medical Liability and Insurance Improvement Act,[1] and therefore the trial court abused its discretion when it dismissed the plaintiff's claims with prejudice. Accordingly, I respectfully dissent.

I note that this is *not* a case involving the *failure* to file an expert report, and

---

1. Tex.Rev.Civ. Stat. Ann. Art. 4590i, § 13.01(r)(6) (Vernon Supp.2003).

this is *not* a case involving the filing of a *late* expert report. Rather, this case involves a timely-filed expert report. The issue is whether the defendants' challenges to the adequacy of the expert report should have been granted, resulting in the dismissal of plaintiff's case with prejudice.

If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, the trial court must grant the motion *"only if* it appears to the trial court, after hearing, that the report does not represent a *good faith effort* to comply with the definition of an expert report in Subsection (r)(6) of this section." TEX.REV.CIV. STAT. ANN. Art. 4590i, § 13.01(*l*) (Vernon Supp.2003) (emphasis added); *Bowie Memorial Hosp. v. Wright,* 79 S.W.3d 48, 51–52 (Tex.2002). To constitute a "good-faith effort," the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Bowie,* 79 S.W.3d at 52. A Court reviews the information contained within the four corners of the report to determine whether it constitutes a "good-faith effort" to provide a fair summary of the expert's opinions about the standard of care, breach, and causal connection between breach and injury. *Id.*

### Claims against the Hospital

Dr. Callewart's report reads, in relevant part:

#### A. Injury

Based upon evaluation by MRI, x-ray, and a cervical myelogram in August and September 1996, Dr. John Berry suggested a cervical decompression bilaterally of C7–T1, and possibly re-explore C5–6 bilaterally. This surgery was performed on October 4, 1996, at the Memorial Hospital Southwest in Houston, Texas. This surgery resulted in the patient sustaining an acute traumatic injury in the patient's left knee probably associated with improper positioning of padding of the knee/leg, the patient being presumably in a sitting position. The patient suffered immediate pain and swelling of the knee postoperatively, with difficulty walking.

On October 23, 1996, it is reported that the patient complains of left knee pain and hobbling on the left knee, which is swollen, with decreased range of motion and tenderness. A MRI of the left knee on November 1, 1996, showed a horizontal tear through the posterior horn of the medial meniscus, extending to the inferior articular surface near the free edge, and a small inferior surface tear of the medial meniscus at the junction of the posterior horn and body segment, and a grade I medial collateral ligament sprain.

#### B. Standard of Care

The knee injuries described in the MRI do not occur when the customary and usual standards of care are exercised in the positioning and strapping a patient on the operative table. However, the injuries can occur when the hospital's operating room personnel fail to take necessary precautions to pad and avoid the placement of the leg/knee in an abnormal position by strapping the patient to prevent movement during surgery.

#### C. Breach

It is my expert opinion, based upon a reasonable medical probability, that the knee injuries suffered by the patient were due to the failure of the operating room personnel to exercise

ordinary care, or negligence of the operating room personnel, in placing and maintaining her position on the operating room table.

## D. Causal Connection

The knee injuries described in the MRI do not occur when the customary and usual standards of care are exercised in the positioning and strapping a patient on the operative table. However, the injuries can occur when the hospital's operating room personnel fail to take necessary precautions to pad and avoid the placement of the leg/knee in an abnormal position by strapping the patient to prevent movement during surgery.... On a follow up of her knee pain January 8, 1997, it was noted that 'apparently during her recent surgery, her knees were taped in an untoward position, resulting in some problems. Difficult to know exactly what, but it is felt that she has some cartilage torn in the left knee.'.... It is my expert opinion, based upon a reasonable medical probability, that the knee injuries suffered by the patient were due to the failure of the operating room personnel to exercise ordinary care, or negligence of the operating room personnel, in placing and maintaining her position on the operating table.

**Does Dr. Callewart's report provide enough information to inform the defendant Hospital of the specific conduct the plaintiff has called into question, and to provide a basis for the trial court to conclude that the claims have merit?**

Clearly, Dr. Callewart's report gives notice that the manner in which the hospital personnel strapped the plaintiff to the operating table was called into question. The standard of care requires hospital personnel to take necessary precautions to pad and avoid the placement of the leg/

knee in an abnormal position by strapping (**standard of care**); a medical report indicated that plaintiff's knees were taped in an untoward position on the operating table, and based on a reasonable medical probability, it was Dr. Callewart's expert opinion that the plaintiff's knee injuries were due to the failure of the hospital personnel to properly place and maintain plaintiff's position on the operating table (**breach and causal connection**).

This case is unlike the *Palacios* case. *American Transitional Care Centers v. Palacios,* 46 S.W.3d 873 (Tex.2001). In *Palacios,* the patient fell from his bed, and the expert opined that "precautions to prevent [the patient's] fall were not properly utilized." *Id.* at 880. The supreme court held that this was not a statement of a standard of care because neither the trial court nor the defendant would be able to determine from this statement if the doctor "believes that the standard of care required [defendant] to have monitored Palacios more closely, restrained him more securely, or done something else entirely." *Id.* In contrast, the expert's report in the present case puts the trial court and the defendant on notice of the conduct complained of, *i.e.* that the hospital personnel failed to properly pad and place the leg/knee in a normal position when strapping the plaintiff to the operating table—by taping the leg in an untoward and abnormal position, a tearing injury was caused to the plaintiff's knee.

Under the guiding principles set out in *Bowie* and *Palacios,* Dr. Callewart's report constitutes a good-faith effort to provide a fair summary of the doctor's opinions about the standard of care, breach and causal connection. Accordingly, the trial court abused its discretion when it granted the defendant's motion challenging the adequacy of the report resulting in a dis-

missal, with prejudice, of the plaintiff's claims against the hospital.

### Claims against Dr. Blum

Dr. Callewart's report reads, in relevant part:

#### A. Injury

"I have reviewed the medical records furnished in the case of Myrna Strom...."

In February of 1997, she was seen by Dr. Henry Blum, an orthopedic surgeon, with her chief complaint involving her left knee. X-rays showed degenerative changes with medial joint space narrowing and some calcification in the notch, and his impression of torn medial meniscus and chondromalacia. Again, he reports that she had no prior history of knee related complaints prior to surgery in question. Dr. Blum performed the menisectomy on February 12, 1997. **On March 3, 1997, it is reported that she is doing fantastic after surgery.** However, on April 19, 1997, Dr. Blum indicates the patient needs a total knee replacement, and on July 28, 1997, reports that she is scheduled for a total knee replacement on August 1, 1997.

(Emphasis added). Dr. Blum performed the total knee replacement surgery on the plaintiff.

#### B. Standard of Care

The surgery would ... violate the standards of care which would be expected to be exercised by a reasonable and prudent orthopedic surgeon under the same or similar circumstances.

#### C. Breach

Based upon the records, it is my expert opinion that the total knee and carpal tunnel releases were not medically indicated. There is no justifica-

tion or very clear indication in the chart for the surgery. There is some suggestion she had severe arthritis in the knee; however, this is not consistent with what was reported in the knee at the time of the prior surgery or other evaluations of the knee. If she had severe degenerative joint disease, this could not have occurred in a several months time frame from when she had the surgery of the neck or from the time of February 12, 1997, surgery.

Based upon a reasonable medical probability, the records indicate no medical basis of reason for the total knee replacement in a woman in her middle 50's who weighs 240 lbs, who had reportedly a normal knee prior to the operative room injury. The surgery would therefore violate the standards of care which would be expected to be exercised by a reasonable and prudent orthopedic surgeon under the same or similar circumstances, and gross negligence to submit such a patient to unnecessary surgery.

#### D. Causal Connection

Based upon the records, it is my expert opinion that the total knee and carpal tunnel releases were not medically indicated. There is no justification or very clear indication in the chart for the surgery.... Based upon a reasonable medical probability, the records indicate no medical basis of reason for the total knee replacement....

**Does Dr. Callewart's report provide enough information to inform the defendant Doctor of the specific conduct the plaintiff has called into question, and to provide a basis for the trial court to conclude that the claims have merit?**

It is clear from Dr. Callewart's report that the conduct called into question is the performance of a total knee replacement operation, when such surgery was unnecessary. The report provides a fair summary of Dr. Callewart's opinions about the **standard of care** (that which would be expected to be exercised by a reasonable and prudent orthopedic surgeon under the same or similar circumstances), **breach** (performing "unnecessary" knee replacement surgery, which is "not medically indicated", for which there is "no justification ... in the chart"), and **causal connection** (the breach of the applicable standard of care caused the injury of unnecessary knee replacement surgery).

With regard to standard of care, the Texas Supreme Court stated in *Palacios:*

> The standard of care for a hospital is what an ordinarily prudent hospital would do under the same or similar circumstances. .... Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently.

*Id.* at 880. In the present case, the expert's report identified the standard of care for an orthopedic surgeon, and specifically stated what care was expected, but not given, *i.e.,* a diagnosis and action based on what is medically indicated, not the performance of unnecessary major surgery.

Once again, under the guiding principles set out in *Bowie* and *Palacios,* Dr. Callewart's report constitutes a good-faith effort to provide a fair summary of his opinions about the standard of care, breach, and causal connection. Accordingly, the trial court abused its discretion when it granted the defendant doctor's motion challenging the adequacy of the report resulting in a dismissal, with prejudice, of

the plaintiff's claims against the defendant, Dr. Blum.

## CONCLUSION

We should sustain appellant Strom's points of error one through seven, reverse the judgment, and remand the case to the trial court.