

NUMBER 13-04-00480-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**RICARDO BARRERA, M.D.,**                               **Appellant,**

**v.**

**ISELA RICO AND MANUEL RICO,**
**INDIVIDUALLY AND AS PARENTS AND**
**NEXT FRIENDS OF GLORIA RICO, A MINOR,**          **Appellees.**

---

**On appeal from the 206th District Court of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION ON REMAND

**Before Justices Yañez, Garza, and Vela**
**Memorandum Opinion on Remand by Justice Garza**

On remand from the Texas Supreme Court, we address the contentions made by appellant, Ricardo Barrera, M.D., that the trial court erred: (1) in granting a motion to extend the expert report deadline filed by appellees, Isela Rico and Manuel Rico, individually and as parents and next friends of Gloria Rico., a minor (collectively "the Ricos"); and (2) in denying Barrera's motions for sanctions and dismissal for the Ricos'

failure to file an expert report that conformed to the requirements of former article 4590i of the Texas Revised Civil Statutes.[1]  We affirm.

## I. BACKGROUND

On August 29, 2003, the Ricos filed suit against Barrera for medical malpractice. On January 26, 2004, the Ricos filed a motion to extend the expert report deadline and to compel deposition of Barrera.  *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 13.01(f), 1995 Tex. Gen. Laws 985, 986 (former TEX REV. CIV. STAT. art. 4590i, § 13.01(f)), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. After a hearing on February 13, 2004, the trial court granted the Ricos' motion and extended the expert report deadline from the original date of February 18, 2004 to March 19, 2004.  *See id.*  On March 22, 2004, the Ricos filed an expert report from John Spurlock, M.D.

On March 24, 2004, Barrera filed a motion for sanctions and dismissal, claiming that Spurlock's expert report was untimely.  *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(e), 1995 Tex. Gen. Laws 985, 986 (repealed 2003).  After a hearing on April 12, 2004, the trial court denied Barrera's motion for sanctions and dismissal on July 2, 2004.  On May 26, 2004, Barrera filed a second motion for sanctions and dismissal, contending that Spurlock's expert report was inadequate.  *See id.*; *see also* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(r)(6), 1995 Tex. Gen. Laws 985, 986 (repealed 2003).  After a hearing, the trial court denied Barrera's second motion for

---

[1] Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 13.01, 1995 Tex. Gen. Laws 985, 986 (former TEX REV. CIV. STAT. art. 4590i, § 13.01), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.  Former article 4590i was replaced by House Bill 4 (now Chapter 74 of the Texas Civil Practice and Remedies Code), which governs health care liability claims commenced on or after September 1, 2003.

sanctions and dismissal on July 22, 2004.

On August 24, 2004, the Ricos filed a notice of nonsuit without prejudice on their claims against Barrera, which the trial court granted. Barrera appealed the trial court's denial of his motions for sanctions and dismissal. This Court held that the Ricos' nonsuit of their claims against Barrera rendered the interlocutory orders moot thus depriving the Court of jurisdiction. *Barrera v. Rico*, No. 13-04-480-CV, 2005 Tex. App. LEXIS 5683, at *2 (Tex. App.–Corpus Christi July 21, 2005), *rev'd*, 251 S.W.3d 519, 520 (Tex. 2008) (per curiam).

The Texas Supreme Court reversed this Court's decision and remanded the matter for consideration in light of its holding in *Villafani v. Trejo*, 251 S.W.3d 466, 471 (Tex. 2008). *See Barrera*, 251 S.W.3d at 520. In *Villafani*, the supreme court concluded that Villafani's motion for sanctions and dismissal survived the Ricos' nonsuit and "could be the subject of an appeal." *Villafani*, 251 S.W.3d at 471. In *Barrera*, the supreme court noted that the underlying facts were similar to *Villafani* and, therefore, concluded that this Court's "judgment that it lacked jurisdiction in this case is thus erroneous." *Barrera*, 251 S.W.3d at 520. Therefore, we must analyze the propriety of the trial court's denial of Barrera's motion for dismissal and sanctions.

## II. STANDARD OF REVIEW

We review a trial court's decision to dismiss a case under section 13.01(e) of former article 4590i under an abuse of discretion standard. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). A trial court abuses its discretion if it acts arbitrarily or unreasonably without reference to any guiding rules or principles. *See Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Strom v. Mem'l Hermann Hosp. Sys.*,

3

110 S.W.3d 216, 220 (Tex. App.–Houston [1st Dist.] 2003, pet. denied).

## III. ANALYSIS

In his sole issue, Barrera asserts that the trial court abused its discretion in granting the Ricos' motion to extend the expert report deadline and in denying his motion for sanctions and dismissal. Specifically, Barrera contends that the Ricos did not demonstrate good cause entitling them to a thirty-day extension, and, even if the extension was properly granted, the Ricos failed to file Spurlock's expert report prior to the extended deadline. Additionally, Barrera argues that Spurlock's report was inadequate. The Ricos counter by arguing that they offered sufficient evidence of good cause that was not controverted by Barrera; therefore, the trial court did not abuse its discretion in granting their motion to extend the expert report deadline. Additionally, the Ricos contend that Spurlock's expert report sufficiently addressed the required elements for an expert report in a medical malpractice suit.

### A. Applicable Law

Section 13.01(d) of former article 4590i provides that:

> Not later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period established under Subsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted:
>
> > (1) furnish to counsel for each physician or health care provider one or more expert reports,[2] with a curriculum vitae of each expert listed

---

[2] Section 13.01(r)(6) defines an "expert report" as a:

written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(r)(6), 1995 Tex. Gen. Laws 985, 986 (repealed 2003).

4

in the report; or

> (2) voluntarily nonsuit the action against the physician or health care provider.

Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(d), 1995 Tex. Gen. Laws 985, 986 (repealed 2003). However, section 13.01(f) provides that "[t]he court may, for good cause shown after motion and hearing, extend any time period specified in Subsection (d) of this section for an additional 30 days. Only one extension may be granted under this subsection." *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(f), 1995 Tex. Gen. Laws 985, 986 (repealed 2003). If the requirements of section 13.01(d) are not met, or a section 13.01(f) request is denied, or the grace period expires, the court shall:

> enter an order awarding as sanctions against the claimant or the claimant's attorney:

> > (1) the reasonable attorney's fees and costs of court incurred by that defendant;

> > (2) the forfeiture of any cost bond respecting the claimant's claim against the defendant to the extent necessary to pay the award; and

> > (3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling.

Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(e), 1995 Tex. Gen. Laws 985, 986 (repealed 2003); *see Palacios*, 46 S.W.3d at 877.

## B. Discussion

### 1. The Ricos' Request to Extend the Expert Report Deadline

On February 13, 2004, the trial court conducted a hearing on the Ricos' request for an extension of the expert report deadline. At this hearing, the Ricos argued that Barrera had not made himself amenable to deposition, which prevented them from compiling a comprehensive expert report. In addition, the Ricos asserted that they were unable to

decipher Barrera's handwritten notes pertaining to the treatment of the patient, hindering their ability to produce a timely expert report.[3]  Based on these assertions, the Ricos argued that they had established "good cause" warranting a thirty-day extension of the expert report deadline.  Barrera did not produce evidence controverting the Ricos' assertions.

Barrera argues that the Ricos were not entitled to a thirty-day extension because they did not present any evidence to the trial court in support of their contentions.  Barrera, however, does not cite, nor are we aware of, any authority requiring the Ricos to present evidence at a hearing addressing a section 13.01(f) request.  The Ricos were merely required to demonstrate "good cause" for the extension.  In any event, only the unsworn statements of the Ricos' trial counsel was presented at the hearing.  Generally, "an attorney's statements must be under oath to constitute evidence. . . .  However, such error is waived by the failure to object when the opponent knew or should have known an objection was required." *Rittenhouse v. Sabine Valley Ctr. Found., Inc.*, 161 S.W.3d 157, 165 (Tex. App.–Texarkana 2005, no pet.) (internal citations omitted).  Barrera did not object to the statements made by the Ricos' trial counsel at the hearing; therefore, Barrera waived this complaint and the statements of the Ricos' trial counsel provided a sufficient basis for the trial court to grant the Ricos' section 13.01(f) extension request.  *See id.*

Barrera further argues that because Spurlock later admitted that he based his opinions solely upon the review of the medical records provided by the hospital, the deposition was unnecessary and was used solely for the purpose of securing an extension

---

[3] The record indicates that Barrera objected to typing or otherwise producing his handwritten notes in a legible form.  Barrera later withdrew his objection and agreed to provide a type-written transcription of his notes regarding the treatment of the patient.

to file Spurlock's expert report.  However, at the time of the hearing, the Ricos anticipated that in deposing Barrera, they would procure valuable information for the expert report.  As such, Barrera's reliance on Spurlock's admission that he did not rely on the deposition—made after the extension was granted—is irrelevant.

The language of section 13.01(f) provides that the trial court may grant an extension on a showing of good cause.  *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(f), 1995 Tex. Gen. Laws 985, 986 (repealed 2003).  The use of the word "may" in a statute indicates that the provision is directory and not mandatory.  *See Roberts v. Med. City Dallas Hosp., Inc.*, 988 S.W.2d 398, 402 (Tex. App.–Texarkana 1999, pet. denied) (citing *Weldon v. Weldon*, 968 S.W.2d 515, 518 (Tex. App.–Texarkana 1998, no pet.)). "When a trial court's function is directory and not mandatory, the reviewing court should give deference and wide latitude to the decision of the trial court.  We should only reverse upon a showing of a clear abuse of discretion."  *Id.*; *see Schorp v. Baptist Mem'l Health Sys.*, 5 S.W.3d 727, 732 (Tex. App.–San Antonio 1999, no pet.) ("Even where good cause exists, the trial court would still be within its discretion to grant or deny an extension.").  We conclude that Barrera has not shown that the trial court clearly abused its discretion in granting the Ricos a thirty-day extension to file Spurlock's expert report.

### 2. Timeliness of Spurlock's Expert Report

After the February 13, 2004 hearing, the trial court granted the Ricos' motion to extend the expert report deadline thirty days from February 18, 2004 to March 19, 2004. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(f), 1995 Tex. Gen. Laws 985, 986 (repealed 2003).  The Ricos did not file Spurlock's expert report with the trial court until March 22, 2004.  However, Barrera's trial counsel testified at the April 12, 2004

7

hearing on Barrera's first motion for sanctions and dismissal that he received a copy of Spurlock's expert report on March 16, 2004. Moreover, the certificate of service attached to the report indicates that the Ricos served Spurlock's expert report on all parties on March 16, 2004. Because section 13.01(d) merely required that the Ricos furnish Spurlock's expert report to Barrera's counsel within the statutorily prescribed deadline, we cannot say that the Ricos' expert report is untimely. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(d), 1995 Tex. Gen. Laws 985, 986 (repealed 2003).

### 3. The Adequacy of Spurlock's Expert Report

Generally, an expert report's adequacy does not depend on whether the expert uses any particular "magical words." *Windsor v. Maxwell*, 121 S.W.3d 42, 48 (Tex. App.–Fort Worth 2003, pet. denied) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002)). A report is sufficient if it "contains information summarizing and explaining the causal relationship between the doctor's failure to meet the applicable standards of care and the plaintiff's injury." *Id.* (citing *Bowie Mem'l Hosp.*, 79 S.W.3d at 53). The expert must explain the basis of "his statements" linking "his conclusions" to the facts. *See Earle v. Ratliff*, 998 S.W.3d 882, 890 (Tex. 1999).

In *Palacios*, the Texas Supreme Court stated that:

[t]he issue for the trial court is whether 'the report' represents a good-faith effort to comply with the statutory definition of an expert report. . . . That definition requires, as to each defendant, a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury. *Because the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document.*

46 S.W.3d at 878 (internal citations omitted) (emphasis added). Moreover, an expert report need not marshal all the plaintiff's proof, but it must include the expert's opinion on

8

each of the elements identified in the statute in order to represent a good-faith effort. *Id.* For simplicity, the supreme court fashioned a two-part inquiry for reviewing expert reports. *Id.* at 879. "First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit." *Id.*

In their original petition, the Ricos alleged that Barrera's "[f]ailure to appropriately manage and treat [Isela's] labor and delivery of Gloria" caused the following injuries:

1. [S]he [Gloria] has been severely and permanently impaired and disfigured in the past, and will suffer from serious limitations and disfigurement in the future for the remainder of her natural life;

2. [S]he has incurred extensive medical and rehabilitative care expenses in the past, and will continue to incur them in the future;

3. [S]he will incur extensive medical and rehabilitative care expenses after obtaining the age of majority;

4. [H]er ability to be gainfully employed and enjoy an earning capacity and wages in the future has been seriously diminished for the balance of her life;

5. [S]he has endured great physical and mental pain, suffering and anguish, and in all reasonable probability will continue to suffer in this manner in the future; and

6. [S]he has suffered loss of enjoyment of life, in the past and in the future.

In his expert report, Spurlock stated the following:

The standard of care required that Dr. Barrera use the appropriate maneuvers and not use excessive traction in order to relieve the shoulder dystocia. Dr. Barrera failed to document the use of any acceptable maneuvers to relieve the shoulder dystocia. The brachial plexus injury was more likely than not, from excessive traction by Dr. Barrera. Using excessive traction to relieve a shoulder dystocia is below the standard of care. Specifically, the standard of care required that Dr. Barrera utilize the appropriate maneuvers to try to relieve the shoulder dystocia. That would include the McRoberts maneuver, suprapubic pressure, delivery of the posterior arm, the Woods maneuver, the Rubin's maneuver, and/or the Zavenelli maneuver. . . . The standard of care required that Dr. Barrera

9

perform all or some of these maneuvers in order to relieve the severe shoulder dystocia and safely deliver Gloria Rico. Dr. Barrera failed to document the use of any maneuver. As such, he more likely than not, did not utilize any other maneuvers as required by the standard of care to atraumatically and safely deliver the baby and breached the standard of care.

. . . .

The above-noted breaches of the standards of care by Dr. Barrera were, more likely than not, a proximate cause of Gloria Rico's injuries including but not limited to her permanent right brachial plexus injury and its subsequent sequelae. As a result of Dr. Barrera's failure to utilize appropriate maneuvers to alleviate the shoulder dystocia during the delivery of Gloria Rico, the nerves innervating the arm, shoulder and hand were more likely than not, stretched, torn or avulsed causing the right brachial plexus injury. Had Dr. Barrera met the above-noted standards of care, to a reasonable degree of medical probability, Gloria Rico would not have suffered these injuries and the subsequent sequelae. That is, by Dr. Barrera failing to alleviate the shoulder dystocia using appropriate maneuvers as noted above, failing to deliver Gloria Rico atraumatically and without excessive traction during the delivery of Gloria Rico and thereby allowing a traumatic vaginal delivery, Dr. Barrera's breaches of the standards of care noted above, in reasonable medical probability, more likely than not, proximately caused the nerves innervating the right arm, shoulder and hand to be stretched, torn or avulsed causing the permanent brachial plexus injury and subsequent sequelae.

Barrera argues that Spurlock's expert report merely established that Barrera failed to document the use of any acceptable maneuvers to relieve the shoulder dystocia. We disagree.

Spurlock's expert report adequately set forth the standard of care pertaining to Barrera, how that standard was breached, and the result—"Dr. Barrera's breaches of the standards of care . . . proximately caused the nerves innervating [sic] the right arm, shoulder and hand to be stretched, torn or avulsed causing permanent brachial plexus injury and subsequent sequelae [in Gloria]." *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(r)(6), 1995 Tex. Gen. Laws 985, 986 (repealed 2003). Moreover,

Barrera's failure to document any of the maneuvers used to alleviate Gloria's injuries, as Spurlock stated in his expert report, also constituted a breach of the standard of care. *See Sides v. Guevara*, 247 S.W.3d 293, 301-02 (Tex. App.–El Paso 2007, no pet.) (concluding that Dr. Cartwright's expert report, which noted that Dr. Sides's failure to document what type of surgery he performed was a breach of the standard of care, "provided a fair summary . . . as to causation because it linked the failure of Dr. Sides to appreciate and diagnose [Plaintiff's] toe problems and to document the surgery he performed to the subsequent infection in her knee"; therefore, the trial court did not abuse its discretion in denying Dr. Sides's motion to dismiss). Confining our review solely to Spurlock's expert report, we cannot say that the report lacked "sufficient specificity" to inform Barrera of the specific conduct that the Ricos called into question, or to allow the trial court to determine if the Ricos' claims have merit; therefore, Spurlock's expert report is adequate. *See Palacios*, 46 S.W.3d at 879; *see also* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(r)(6), 1995 Tex. Gen. Laws 985, 986 (repealed 2003). We conclude that the trial court did not abuse its discretion in denying Barrera's motions for sanctions and dismissal. *See Palacios*, 46 S.W.3d at 878; *Walker*, 111 S.W.3d at 62; *Strom*, 110 S.W.3d at 220. Accordingly, we overrule Barrera's sole issue on appeal.

## IV. Conclusion

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion on Remand delivered
and filed this the 6th day of November, 2008.

11