Opinion issued December 31, 2009



 

 

 
 

 









In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00898-CV

____________


CHIQUITA MITCHELL, VERAZONDA MITCHELL, DOMINQUE
MITCHELL, AARON MITCHELL, SAMUEL MITCHELL, FRANK
MITCHELL III, CARL MITCHELL, MARIE OPHELIA, THEODORE
MITCHELL, AND JONATHON MITCHELL, Appellants


V.


THE METHODIST HOSPITAL, ROSIE YOUNG, MELISSA ABBOT,
DENISE M. STUCKEY, AND BERNICE ONYENUZI, Appellees






On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 2008-05231



 



MEMORANDUM OPINION


 Chiquita Mitchell, Verazonda Mitchell, Dominique Mitchell, Aaron Mitchell,
Samuel Mitchell, Frank Mitchell III, Carl Mitchell, Marie Ophelia, Theodore Mitchell,
and Jonathon Mitchell (collectively, "the Mitchells") bring this appeal to contest the
trial court's dismissal of their healthcare liability lawsuit against The Methodist
Hospital, Rosie Young, Melissa Abbot, Denise M. Stuckey, and Bernice Onyenuzi
(collectively, "Methodist"). We affirm.

Background

 Frank Mitchell was admitted to Methodist in November 2008, complaining of
chest pain. Mr. Mitchell was diagnosed with a myocardial infarction and underwent
cardiac catheterization and placement of a cardiac stent. During his 3-day stay,
hospital staff placed an IV catheter in Mr. Mitchell's left arm. 

 Shortly after his discharge, Mr. Mitchell developed a fever and began to suffer
pain in his left arm. He went to the Emergency Room at Methodist, where he was
given a prescription for amoxicillin and told to take Motrin for the pain. After his
symptoms did not improve, he returned to the Emergency Room at Methodist. Mr.
Mitchell was subsequently diagnosed with septic thrombophlebitis--inflammation of
a vein due to infection--and re-admitted to the hospital. During his second
hospitalization, Mr. Mitchell developed multisystemic organ failure and he died on
December 27, 2005.

 The Mitchells then filed suit against Methodist, alleging that certain employees
of Methodist were grossly negligent in their care of Mr. Mitchell with regard to the
insertion and care of the IV, failing to prevent Mr. Mitchell's infection by providing
inadequate and unsafe facilities, failing to properly instruct and train hospital
personnel, and failing to properly diagnose and treat Mr. Mitchell's infection. The
Mitchells' First Amended Petition named both Methodist Hospital as well as
registered nurses Bernice Onyenezi, Rosie Young, Melissa Abbott, and Denise M.
Stuckey and other named and unnamed Methodist employees as defendants. The
Amended Petition alleged that Methodist was vicariously liable for the acts of its
employees. Onyenezi, Young, Abbott, and Stuckey were each served and filed an
answer in this lawsuit. 

 Methodist sought to dismiss the Mitchells' lawsuit pursuant to Chapter 74 of
the Texas Civil Practice and Remedies Code, which requires plaintiffs in a healthcare
liability lawsuit to file expert reports providing "a fair summary of the expert's
opinions . . . regarding applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards, and the
causal relationship between that failure and the injury, harm, or damages claimed."

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (r) (Vernon Supp. 2008). Methodist
argued that the Mitchells' expert report was fatally deficient because it failed to
provide a fair standard of care for any of the defendants, because the expert's opinions
were "wholly conclusory and based on mere conjecture and assumptions that are
contrary to the medical record and fact," because the expert's criticisms were not tied
to any particular defendant, and because the expert failed to provide a fair summary
of how the alleged breaches of the standard of care proximately caused Mr. Mitchell's
injuries. 

 The Mitchells objected to the timeliness of Methodist's motion to dismiss. The
Mitchells argued that Methodist's objections to the expert's report were served by fax,
one day too late, and the objections were therefore waived. Methodist replied by
pointing out its objections to the Mitchells' expert report had been timely filed in the
Harris County District Clerk's after-hours drop box and had been mailed that same
evening via certified mail, return receipt requested. Methodist submitted an affidavit
from one of its attorneys, Dwight W. Scott, Jr., who attested that he had mailed
Methodist's objections to counsel for the Mitchells on the evening of June 12, 2008
"before the midnight deadline" and that he "went to the main post office downtown
in Houston, Texas and placed into the United States Postal Service for delivery via
first class mail, return receipt requested . . . in a postpaid properly addressed
envelope." 

 On August 6, 2008, the trial court granted Methodist's motion to dismiss the
Mitchells' lawsuit. The order also recited that Methodist should recover "all costs of
Court" from the Mitchells.

 The Mitchells filed a motion for new trial on September 5, 2008. Methodist
filed a motion for entry of judgment on October 9, 2008, asking that the trial court
enter judgment in its favor for $19,955.20--the amount Methodist's attorney attested
in an attached affidavit was the amount of reasonable and necessary attorney's fees
Methodist had incurred in defending against the Mitchells' claims. On October 22,
2008, the trial court awarded Methodist $9,977.60 as reasonable attorney's fees and
costs of court. This appeal by the Mitchells followed.Analysis

 On appeal, the Mitchells contend that the trial court erred by entertaining
Methodist's objections to their expert report and motion to dismiss under Chapter 74
because Methodist failed to timely serve its objections to the Mitchells' expert report. 
The Mitchells also contend that the trial court erred by dismissing their claims against
Methodist on the grounds that their expert report was inadequate under Chapter 74 of
the Texas Civil Practice and Remedies Code. In the alternative, the Mitchells argue
that they should have been granted additional time to amend any deficiencies in the
report. Finally, the Mitchells complain that the trial court erred by awarding
Methodist its attorney's fees.

I. Medical Expert Reports

 A. Standard of Review

 We review a trial court's ruling dismissing a healthcare liability lawsuit under
Chapter 74 of the Texas Civil Practice and Remedies Code under an abuse of
discretion standard. Am. Transitional Care Centers v. Palacios, 46 S.W.3d 873, 877
(Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable
manner without reference to guiding rules or principles. See Garcia v. Martinez, 988
S.W.2d 219, 222 (Tex. 1999). When reviewing matters committed to the trial court's
discretion, we may not substitute our own judgment for that of the trial court. Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). A trial court does not abuse its
discretion merely because it decides a discretionary matter differently than an
appellate court would in a similar circumstance. See Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985).

 Although we may defer to the trial court's factual determinations, we review
questions of law de novo. Rittmer v. Garza, 65 S.W.3d 718, 722 (Tex.
App.--Houston [14th Dist.] 2001, no pet.). To the extent resolution of the issue
before the trial court requires interpretation of the statute itself, we apply a de novo
standard. Buck v. Blum, 130 S.W.3d 285, 290 (Tex. App.--Houston [14th Dist.] 2004,
no pet.).

 In reviewing whether an expert report complies with Chapter 74, we evaluate
whether the report "represents a good-faith effort" to comply with the statute. Strom
v. Mem'l Hermann Hosp. Sys., 110 S.W.3d 216, 221 (Tex. App.--Houston [1st Dist.]
2003, pet. denied). In making this evaluation, we must look only at the information
that is contained within the four corners of the report. Bowie Mem'l Hosp. v. Wright,
79 S.W.3d 48, 53 (Tex. 2002).

 B. Chapter 74 Expert Report Requirements

 Pursuant to section 74.351, medical-malpractice plaintiffs must provide each
defendant physician and health care provider with an expert report or voluntarily
nonsuit the action. Tex. Civ. Prac. & Rem. Code § 74.351(a) (Vernon Supp. 2008). 
If a claimant timely furnishes an expert report, a defendant may file a motion
challenging the report's adequacy. Id. The trial court shall grant the motion only if
it appears, after hearing, that the report does not represent a good faith effort to
comply with the statutory definition of an expert report. See id. § 74.351(1). The
statute defines an expert report as a written report by an expert that provides, as to
each defendant, a fair summary of the expert's opinions as of the date of the report
regarding: (1) applicable standards of care; (2) the manner in which the care provided
failed to meet the standards; and (3) the causal relationship between that failure and
the injury, harm, or damages claimed. See id. § 74.351(r)(6); Palacios, 46 S.W.3d at
877.

 Although the report need not marshall all the plaintiff's proof, it must include
the expert's opinions on the three statutory elements--standard of care, breach, and
causation. See Palacios, 46 S.W.3d at 878; Gray v. CHCA Bayshore, L.P., 189
S.W.3d 855, 859 (Tex. App.--Houston [1st Dist.] 2006, no pet.). In detailing these
elements, the report must provide enough information to fulfill two purposes if it is to
constitute a good faith effort. First, the report must inform the defendant of the
specific conduct the plaintiff has called into question. Palacios, 46 S.W.3d at 879. 
Second, the report must provide a basis for the trial court to conclude that the claims
have merit. Id. A report that merely states the expert's conclusions as to the standard
of care, breach, and causation does not fulfill these two purposes. Id. "The expert
must explain the basis for his statements and link his conclusions to the facts." Bowie,
79 S.W.3d at 52 (citing Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)). 
Furthermore, in assessing the report's sufficiency, the trial court may not draw any
inferences, and instead must rely exclusively on the information contained within the
report's four corners. See Palacios, 46 S.W.3d at 878.

 C. Timeliness of Methodist's Objections

 Section 74.351 requires that a defendant served with an expert report under
Chapter 74 may object to the sufficiency of the plaintiff's expert report, "not later than
the 21st day after the date [the expert report] was served." Tex. Civ. Prac. & Rem.
Code § 74.351(a) (Vernon Supp. 2008). If a defendant does not file and serve its
objections within this 21-day time frame, "all objections are waived." Id. 

 The Mitchells argue that Methodist was served with the expert report on May
22, 2008, and that the deadline for Methodist's objections under section 74.351 was
June 12, 2008. The Mitchells contend that Methodist missed the filing deadline by
one day because their counsel received a faxed copy of the objections and motion to
dismiss on June 13, 2008. Methodist points out that it did timely file the objections
and motion to dismiss on June 12, 2008 with the Harris County District Clerk and that
the document was mailed, that same evening before midnight, with the United States
Postal Service via certified mail, return receipt requested. Methodist's certificate of
service attached to the document in question recited that it was "served on all counsel
of record pursuant to Rule 21a, Texas Rules of Civil Procedure, on this the 12th day
of June 2008." Methodist also provided the affidavit of its counsel attached to its
response to the Mitchells' contention that its objections under section 74.351 were
untimely, attesting to the facts surrounding the filing and mailing of Methodist's
objections to the Mitchells' expert report.

 Under Rule 21a, if a pleading is properly addressed and mailed, postage prepaid,
a presumption arises that the pleading was properly received by the addressee. Cliff
v. Huggins, 724 S.W.2d 778, 780 (Tex. 1987). The certificate of service of the party
or attorney is the basis for the presumption. Cronen v. City of Pasadena, 835 S.W.2d
206, 209 (Tex. App.--Houston [1 st Dist.] 1992, no writ). Service by mail is complete
upon deposit of the document, enclosed in a postpaid, properly addressed wrapper, in
a post office or official depository under the care and custody of the United States
Postal Service. Tex. R. Civ. P. 21a. The record before us contains a certificate of
service on the objections and motion to dismiss stating that the document was served
pursuant to Rule 21a upon all counsel of record. Although it did not mention the
method of service, "Rule 21a does not require that a certificate of service detail the
method of service used." Approximately $14,980.00 v. State, 261 S.W.3d 182, 189
(Tex. App.--Houston [14th Dist.] 2008, no pet.). 

 A certificate by a party or an attorney of record is prima facie evidence of the
fact of service. Miller v. Prosperity Bank, N.A., 239 S.W.3d 440, 442 (Tex.
App.--Dallas 2007, no pet.). As noted by the Texas Supreme Court, "notice properly
sent pursuant to Rule 21a raises a presumption that notice was received." Mathis v.
Lockwood, 166 S.W.3d 743, 745 (Tex. 2005). However, the opposing party may rebut
this presumption by offering proof that the notice or document was not received. Cliff,
724 S.W.2d at 780; see also Tex. R. Civ. P. 21a ("Nothing [in Rule 21a] shall preclude
any party from offering proof that the notice or instrument was not received. . . ."). 
The presumption may be rebutted by an offer of proof of nonreceipt. Id.;
Approximately $14,980.00, 261 S.W.3d at 189 (returned envelope bearing United
States Post Office "unclaimed" mark deemed sufficient to rebut presumption of
service).

 The record before us, however, does not contain any evidence of the Mitchells'
counsel non-receipt of the mailed copy of the objections, and the Mitchells have not
disputed the validity of Methodist's certificate of service, i.e., that the objections were
mailed to their counsel on June 12, 2008. See Graham-Rutledge & Co., Inc. v. Nadia 

Corp., 281 S.W.3d 683, 691 (Tex. App.--Dallas 2009, no pet.) (where party failed to
provide offer of proof as to non-receipt of notice of hearing, proper service pursuant
to certificate of service was presumed). Instead, the Mitchells continue to point to the
faxed copy of the objections received on June 13, 2008. However, the fact that
Methodist may have faxed a second copy of its objections on June 13 does not mean
that it did not mail an earlier copy the day before. This document, standing by itself,
is not sufficient to rebut the presumption raised by the certificate of service.

 Finally, we note that Methodist's response to the Mitchells' complaints
regarding the timeliness of its objections and motion to dismiss provided the
uncontroverted affidavit of Methodist's attorney, testifying that he personally mailed
the document in question on June 12, 2008 via certified mail, return receipt requested. 
Even if the Mitchells' bare allegations were sufficient to rebut the presumption of
timely service raised by the certificate of service, this affidavit would have sufficed
to carry Methodist's burden to show that the document was, in fact, timely mailed to
the Mitchells on June 12, 2008. Under these facts, we overrule the Mitchells' first
issue and hold that the trial court did not err by considering Methodist's objections and
motion to dismiss pursuant to Chapter 74. 


 Adequacy of the Mitchells' Expert Report


 The Mitchells submitted an expert report authored by Dr. Carl M. Berkowitz, 
M.D., a board certified specialist in Internal Medicine and Infectious Diseases.
Methodist objected to Dr. Berkowitz's report on the grounds that it failed to provide
a fair summary of the standard of care for any of the defendants, and because Dr.
Berkowitz's opinions were "wholly conclusory and based on mere conjecture and
assumptions that are contrary to the medical record and fact," were not tied to any
particular defendant, and failed to provide a fair summary of how the alleged breaches
of the standard of care proximately caused Mr. Mitchell's injuries. 

 On appeal, the Mitchells contend the trial court committed an abuse of
discretion by sustaining Methodist's objections and dismissing their lawsuit. The
Mitchells argue that Dr. Berkowitz's report was at least a "good faith" attempt to meet
the statutory requirements and that the trial court should not have dismissed their suit. 
The Mitchells also contend that, because they alleged that Methodist is vicariously
liable, the report did not need to set out the required standard of care for each
defendant employee of Methodist and how that employee breached the applicable
standard of care. The Mitchells further alleged that Dr. Berkowitz's report adequately
laid out the standard of care, breaches and resulting harm caused by Methodist's acts
and omissions.

 1. Dr. Berkowitz's Report

 Dr. Berkowitz's report stated, in relevant part, as follows:

Applicable Standards of Care


 It is the standard of care to have a policy in place for the management of
a peripheral intravenous catheter. While these policies may vary from
place to place they must all include observation and documentation of the
appearance of the peripheral IV site. Redness, tenderness and swelling
must all be documented if present. This is done in order to decrease the
incidence of IV site complications, such as infection or phlebitis. In
addition there must be documentation of the removal of a peripheral IV
especially if it is removed due to erythema, tenderness or other
abnormalities of the site.


 If abnormalities are found at the site of the IV it must be removed
immediately. The findings must be documented and a physician must be
notified in order that appropriate evaluation and treatment be started.


Violation of Standards of Care


 There is no indication of the examination of the peripheral IV site in the
nursing notes. When the IV site appearance is documented it is always
stated that the dressing is dry and intact and that the site is covered. This
implies that the IV site could not be specifically examined. This would
be a violation of the standard of care.


 Despite the statement of the wife of Mr. Mitchell that the IV was causing
pain and tenderness, there is no such documentation in the chart. This
would be a violation of the standard of care.


 There is no documentation that a physician was ever notified about any
abnormalities of the IV site. This was a violation of the standard of care.


Causation


 . . . .

 

 In the case of Mr. Frank Mitchell, we have the statement of his wife that
the IV was painful and swollen on 11/29/05. The IV was removed but not
for a number of hours. There was no documentation of these problems.
No physician was notified and thus observation of the site for progressive
signs of infection could not be done. This caused the loss of an
opportunity to intervene with local care, antibiotics or surgery. This
could have ameliorated or avoided the septic thrombophlebitis and
pulmonary abscesses. In my opinion, had appropriate treatment been
administered, STP might not have occurred. Had STP developed, and
treatment been started on 11/29/05, 11/30/05 or even 12/1/05 he more
likely than not would have survived. 

 

 In the case of Mr. Frank Mitchell we have a case of septic
thrombophlebitis in an area of a known prior IV site and we have MRSA
as the causative organism. This implicates the peripheral IV that was
placed during the first hospitalization as the cause of the STP. The STP
resulted in MRSA bacteremia which led to pneumonia and lung
abscesses. These processes lead to ongoing sepsis and intractable
respiratory failure. This cased the ultimate demise of Mr. Frank Mitchell. 


 2. Sufficiency as to Individual Defendants


 Section 74.351 requires that the expert report supporting a health care liability
claim detail the fault of each healthcare provider against whom a claim is brought.
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). "If a plaintiff does not timely serve
an expert report as to a particular defendant, the trial court has no discretion to do
anything other than dismiss the case with prejudice." Rivenes v. Holden, 257 S.W.3d
332, 336 (Tex. App--Houston [14th Dist.] 2008, pet. denied). Dr. Berkowitz's report
does not name any hospital staff, including the named defendants Rosie Young,
Melissa Abbot, Denise M. Stuckey, or Bernice Onyenuzi, or specify any standard of
care for any defendant other than Methodist itself. Accordingly, we hold Dr.
Berkowitz's report is not a sufficient expert report as to these individuals, and the trial
court did not abuse its discretion by dismissing the Mitchells' claims against them. 
Id. at 338 (where expert report did not name physician except by general reference to
"emergency room" or "emergency room staff" and offered no opinions as to his
specific conduct, trial court did not abuse discretion by dismissing claim against him).


 
 Sufficiency as to Methodist
 


 As to Methodist itself, the Mitchells contend that Dr. Berkowitz's report
adequately details its failures to support their claim for vicarious liability. We
disagree. 

 In vicarious liability claim against a hospital for the failure of its employees to
adhere to a standard of care, "a report that adequately implicates the actions of that
party's agents or employees is sufficient." Gardner v. U.S. Imaging, 274 S.W.3d 669,
671-72 (Tex. 2008) (where plaintiffs alleged only vicarious liability against facility,
expert report requirement was fulfilled as to facility if report was adequate as to
employee physician). However, as we noted above, the report is not sufficient as to
the individual named employees because it does not state either an applicable standard
of care for those employees, nor does it state how they breached that standard. 
Instead, the only standard of care stated in Dr. Berkowitz's report is that a policy for
IV management should be in place, presumably at Methodist, that abnormalities at the
IV insertion site should be documented, presumably by some unspecified Methodist
employee, that removal of an IV should be documented, and that, if abnormalities are
found at an IV insertion site, the IV should be removed immediately and a physician
notified. The report does not state that Methodist did not have an IV policy in place,
that abnormalities were seen but were not documented, or that abnormalities were seen
but a physician was not notified. 

 All of Dr. Berkowitz's conclusions in his report are based upon his assumption
that Mr. Mitchell displayed signs of redness or swelling at the IV site and that
Methodist employees either failed to look for such symptoms or saw such symptoms
and failed to document them and notify physicians. None of these assumptions can
be supported by the report itself. Dr. Berkowitz's only reference to any symptoms at
the IV insertion site is that, according to Mr. Mitchell's wife, Mr. Mitchell asked that
the IV be removed due to "pain and swelling" and that the IV was removed some
hours later. Dr. Berkowitz's report does not explain how Methodist should have
reacted to this report of "pain and swelling" and how its failure to act in any particular
manner could be related to the standard of care he sets out for Methodist. "Conclusory
statements regarding standard of care, breach, or causation, do not constitute a good
faith effort to comply with section 74.351 in that they fail to adequately inform each
defendant of the specific conduct called into question by the plaintiff's claims." Gray
,189 S.W.3d at 859 (citing Palacios, 46 S.W.3d at 879). Further, whether a defendant
breached the standard of care due a patient cannot be determined without "specific
information about what the defendant should have done differently." Id. (citing
Palacios, 46 S.W.3d at 880). Reviewing Dr. Berkowitz's report, we hold that the trial
court did not abuse its discretion in dismissing the Mitchells' claims against Methodist
on the grounds that Dr. Berkowitz's report was not sufficient to satisfy Chapter 74.

 

 4. Opportunity to Amend Expert Report

 Finally, we address the Mitchells' contention that the trial court should have
afforded them an opportunity to amend Dr. Berkowitz's report. See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(c) ("If an expert report has not been served within the
period specified . . . because elements of the report are found deficient, the court may
grant one thirty-day extension to the claimant in order to cure the deficiency.")
(emphasis added). The decision whether to allow an such an extension when
requested by plaintiffs is committed to the discretion of the trial court. Ogletree v.
Matthews, 262 S.W.3d 316, 321 (Tex. 2007). 

 On appeal, the Mitchells claim that they should be allowed the opportunity to
amend Dr. Berkowitz's report. We disagree. Although the statute allows the trial
court to grant a 30-day extension to allow plaintiffs to supplement or amend an expert
report the court has found deficient, the statute does not require that the court grant
such an extension. In this case, given the extreme deficiencies of Dr. Berkowitz's
expert report, we cannot say that the trial court abused its discretion by failing to grant
the Mitchells a 30-day extension to amend or supplement his expert report.

 II. Attorney's Fees

 The Mitchells also argue that the trial court erred by awarding Methodist
attorney's fees and costs. The Mitchells contend the trial court's plenary power had
expired by the time it entered the order, that the award of attorney's fees in a
healthcare liability lawsuit is improper when a plaintiff has timely filed its expert
report, and the amount of fees is not supported by the evidence.


 Plenary Power of the Trial Court


 The Mitchells contend that the trial court's plenary power had expired by the
time it entered its order awarding Methodist $ 9,977.60 in attorney's fees. The
Mitchells overlook the fact that they filed a motion for new trial. The Texas Rules of
Civil Procedure are clear--a motion for new trial extends the plenary power of a trial
court. See, e.g., Tex. R. Civ. P. 329b(c)(motions for new trial that are not ruled upon
shall be considered overruled by operation of law after seventy-five days); Tex. R.
Civ. P. 329b(e) (when a timely motion for new trial is filed, trial court retains plenary
power over judgment for thirty days after all such timely-filed motions are overruled,
"either by written and signed order or by operation of law, whichever occurs first."). 
In this case, the Mitchells filed a motion for new trial on September 5, 2008. Because
this motion was overruled by operation of law, the trial court did not lose plenary
power over its judgment until November 19, 2008--one hundred and five days after
the Mitchells' motion for new trial was filed. Tex. R. Civ. P. 329b (c), (e). The trial
court's October 22, 2008 award of attorney's fees was within this deadline.
Accordingly, we hold that the trial court did not lack plenary power to enter the award
of attorney's fees. 


 Attorney's Fees under Chapter 74


 The Mitchells contend that the trial court erred by awarding Methodist its
attorneys fees under Chapter 74 because they timely filed an expert report supporting
their healthcare liability claims. Methodist responds by pointing us to caselaw that
fatally deficient reports--such as Dr. Berkowitz's in this case--are essentially the
same as no report at all, and that such deficient reports may support an award to the
healthcare defendants for attorneys fees. See, e.g., Bogar v. Esparza, 257 S.W.3d
354, 373 (Tex. App.--Austin 2008, no pet.); Rivenes v. Holden, 257 S.W.3d 332 (Tex.
App.--Houston [14th Dist.] 2008, pet. denied); Fox v. Hinderliter, 222 S.W.3d 154,
160 (Tex. App.--San Antonio 2006, pet. stricken). 

 The Texas Supreme Court has plainly stated that a plaintiff who fails to file a
timely and sufficient report is subject to paying a healthcare defendant's attorney's
fees should the defendant move to dismiss the plaintiff's claims under Chapter 74. 
Hernandez v. Ebrom, 289 S.W.3d 316, 318 (Tex. 2009) ("If a timely and sufficient
report is not served, the trial court must award the provider its attorney's fees and costs
and dismiss the case with prejudice.") (citing Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(b)) (emphasis added). Accordingly, given the deficiencies noted above, we
hold that the trial court did not abuse its discretion by awarding attorney's fees to
Methodist.


 Amount of Attorney's Fees


 Finally, the Mitchells contend that the amount of attorney's fees awarded to
Methodist was unreasonable and not supported by the evidence submitted. (1)
 The
Mitchells complain that Methodist failed to submit "testimony" regarding the amount
of attorney's fees it had incurred, and whether that amount was reasonable and
necessary. 

 1. Standard of Review

 We review a trial court's decision to either grant or deny attorney's fees under
an abuse-of-discretion standard, and we review the amount of attorney's fees awarded
under a legal-sufficiency standard. See Ridge Oil Co., Inc. v. Guinn Invs., Inc., 148
S.W.3d 143, 163 (Tex. 2004); Aaron Rents, Inc. v. Travis Cent. Appraisal Dist., 212
S.W.3d 665, 671 (Tex. App.--Austin 2006, no pet.). Because we review the amount
of attorney's fees awarded under a legal-sufficiency review, we must view the
evidence in a light that tends to support the disputed finding and disregard evidence
and inferences to the contrary. Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735,
739 (Tex. 2003). If more than a scintilla of evidence supports the challenged finding,
the legal-sufficiency challenge must fail. Id 

 2. Evidence Submitted

 Regarding the amount of attorney's fees the trial court awarded, there are
several factors a fact finder should consider in determining the reasonableness of a fee. 
Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997). 
These factors include: (1) the time and labor required, the novelty and difficulty of the
questions involved, and the skill required to perform the legal service properly; (2) the
likelihood that the acceptance of the particular employment will preclude other
employment by the lawyer; (3) the fee customarily charged in the locality for similar
legal services; (4) the amount involved and the results obtained; (5) the time
limitations imposed by the client or by the circumstances; (6) the nature and length of
the professional relationship with the client; (7) the experience, reputation, and ability
of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or
contingent on results obtained or uncertainty of collection before the legal services
have been rendered. Id. 

 Methodist submitted testimony of its counsel, via affidavit, regarding the
amount of fees it had incurred in its defense of the case, and opining that the amounts
incurred were reasonable and necessary. Specifically, Dwight W. Scott Jr.,
Methodist's counsel in the trial court, affirmed that he was qualified to opine on the
legal fees charged in the case in light of the fact that he had been licensed since 2000
and was familiar with fees charged for cases of this type and complexity. Scott's
affidavit stated that the legal fees incurred during various actions--including
reviewing pleadings, medical records and related documents; investigating the
Mitchells' complaints against the numerous defendants; compiling the facts
surrounding Mr. Mitchell's medical treatment; preparing responsive pleadings;
retaining experts; conducting "numerous" interviews; and preparing and presenting
Methodist's objections and motion to dismiss--amounted to $19,925.20. In his
affidavit, Scott opined that the amount was reasonable and necessary in light of the
eight Anderson factors, which he laid out in the affidavit. 945 S.W.2d at 818. Scott
also stated that none of the fees incurred related to discovery in the case.

 The Mitchells filed a controverting affidavit by their attorney, and contended
that the sum sought by Methodist was unreasonable in light of the fact that no
discovery had yet occurred in the case. The record does not reflect, however, that the
Mitchells filed or obtained a ruling upon any objections to the sufficiency of Scott's
affidavit. 

 The trial court awarded $ 9,977.60--an amount approximately half of the total
attorney's fees sought by Methodist. Because Scott's affidavit is some evidence
supporting the reasonableness of the award of attorney's fees, we conclude that there
is more than a scintilla of evidence to support the amount of the award. Accordingly,
the trial court did not abuse its discretion by awarding $ 9,977.60 in attorney's fees to
Methodist.

Conclusion

 We overrule the Mitchells' issues on appeal and affirm the judgment of the trial
court.

 

 George C. Hanks, Jr.

 Justice


Panel consists of Justices Keyes, Alcala and Hanks.






 
1. In addition, the Mitchells appear to question the constitutionality of the award of attorney's
fees. Because the Mitchells do not provide any argument or citations to argue the
constitutionality of the award, we hold that this issue has been waived. See Tex. R. Civ. P.
38.1(i).