Charles HASKELL, Appellant,

v.

SEVEN ACRES JEWISH SENIOR CARE SERVICES, INC. and Authorine Laverne Mason, Appellees.

No. 01–09–00553–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 5, 2012.

Rehearing Overruled Feb. 14, 2012.

Charles Haskell, Houston, TX, pro se.

Lauren Margaret Nelson, Elizabeth Dale Burrus, Kroger Burrus, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Charles Haskell, appeals from the trial court's dismissal of his suit against appellees, Seven Acres Jewish Senior Care Services, Inc. and Authorine Laverne Mason. The trial court determined that the documents served by Haskell purporting to comply with the requirements of section 74.351 of the Civil Practice and Remedies Code were so deficient that they did not, in fact, comply with the statutory requirements and dismissed the case.[1] In two issues, Haskell

argues that the trial court abused its discretion (1) by granting Defendants' objections to his expert report and dismissing the case and (2) by denying his request for a 30–day extension to cure any defects in the report.

We affirm.

## Background

For some time prior to August 2007, Haskell was a resident of the Seven Acres Jewish Center (the "Center"). In August 2007, Seven Acres Jewish Senior Care Services, Inc. ("Seven Acres"), owner of the Center, notified Haskell that he was being discharged from the Center.

■ Haskell brought suit against Seven Acres and Mason—one of the nurses that worked at the Center—on August 1, 2008, asserting claims of slander per se, intentional infliction of emotional distress, and breach of fiduciary duty claiming that Seven Acres fabricated an excuse to discharge him from the Center.[2] Haskell handled his suit pro se. According to Haskell, Seven Acres falsely reported to the police that he had threatened various people with physical violence, including a threat to murder various people. Haskell alleged that the real reason for his discharge was that Seven Acres discovered that he did not qualify for Medicaid coverage and Seven Acres wanted to force him out to make room for a higher paying resident.

Defendants filed an answer on September 19, 2008. Seven Acres asserted that, during his time at the Center, Haskell had

---

1. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon 2011).

2. Defendants asserted that all of Haskell's claims were, in fact, health-care-liability claims governed by section 74.351 of the Civil Practice and Remedies Code. Haskell disputed this assertion. The trial court, however, determined that all of Haskell's claims were health-care-liability claims and were governed

by section 74.351. Haskell has not challenged this determination on appeal. Accordingly, for purposes of this appeal, we assume without deciding that Haskell's claims are governed by section 74.351. *See Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) (holding courts do not consider points not raised in briefs).

made repeated threats to take his own life and, on at least one instance, threatened to kill staff members of the Center. Seven Acres further asserted that the Center was not equipped to treat patients who are homicidal or suicidal and had to discharge him.

Some time in November 2008, Haskell served on Defendants certain documents that he asserted were in compliance with section 74.351 of the Civil Practice and Remedies Code. Unaware that they had received the documents, Defendants filed a motion to dismiss on December 23, 2008 asserting that the required report had not been filed, compelling dismissal. Haskell filed a response on January 7, 2009, asserting that he had filed the report in November 2008 and Defendants had missed their 21-day deadline to object to any deficiencies in the report.

After Haskell filed his response, Defendants discovered the documents served by Haskell. Subsequently, they filed a reply to their motion arguing that the documents served by Haskell did not constitute an expert report because they did not address the statutorily required elements of the standard of care and breach. After a couple of hearings, the trial court agreed and dismissed Haskell's suit and denied his request for a 30-day extension to cure any deficiencies. Haskell timely appealed the trial court's ruling.

After setting this case for submission, we abated it, pending the Texas Supreme Court's opinion in *Scoresby v. Santillan*, 346 S.W.3d 546 (Tex.2011). Upon lifting the abatement, we invited the parties to brief the effect of *Scoresby* on this case. Seven Acres submitted supplemental briefing. Haskell did not.

### Sufficiency of the Expert Report

In his first issue, Haskell argues that the trial court abused its discretion by granting Defendants' motion to dismiss for failure to file an expert report.

### A. Standard of review

■ We review all rulings related to section 74.351 of the Texas Civil Practice and Remedies Code under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex.2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex.1999). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985).

Although we may defer to the trial court's factual determinations, we review questions of law de novo. *Rittmer v. Garza*, 65 S.W.3d 718, 722 (Tex.App.Houston [14th Dist.] 2001, no pet.). To the extent resolution of the issue before the trial court requires interpretation of the statute itself, we apply a de novo standard. *Buck v. Blum*, 130 S.W.3d 285, 290 (Tex. App.-Houston [14th Dist.] 2004, no pet.). A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Poland v. Ott*, 278 S.W.3d 39, 45 (Tex.App.-Houston [1st Dist.] 2008, pet. denied). An abuse of discretion occurs if the trial court fails to correctly apply the law to the facts. *Petty v. Churner*, 310 S.W.3d 131, 134 (Tex.App.-Dallas 2010, no pet.).

■ In reviewing whether an expert report complies with section 74.351, we eval-

uate whether the report "represents a good-faith effort" to comply with the statute. *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 221 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). In making this evaluation, we must look only at the information that is contained within the four corners of the report. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex.2002).

## B. Analysis

In a health-care-liability claim, the plaintiff must serve within 120 days of filing suit an expert report for each defendant against whom a health-care-liability claim has been asserted. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon 2011). An expert report is

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). The report does not need to marshal all of the plaintiff's proof, but must include the expert's opinion on each of the three elements: standard of care, breach, and causation. *Bowie Mem'l*, 79 S.W.3d at 53.

If a report is not served as to a defendant physician or health care provider within the required time period, the trial court must dismiss all health-care-liability claims as to that defendant and must award that defendant's reasonable attorney's fees and costs of court. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). If, however, a report has been timely served, "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." *Id.* § 74.351(a).

"[A] document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit." *Scoresby*, 346 S.W.3d at 549.

Some time in November 2008, Haskell served certain documents on Defendants. The documents contained a hand written cover letter with a statement by Haskell that he was serving the documents "[i]n compliance with CPRC 74.351." Included in the documents were:

1. A letter from Dr. Kirit Desai, a cardiologist, describing some of the treatment Haskell had received since his discharge from the Center;

2. Dr. Desai's curriculum vitae;

3. two letters from Dr. Martin R. Steiner, a neurologist, describing Haskell's medical condition at certain examinations in 2007 and 2008 including his condition after he was discharged from the Center;

4. Dr. Steiner's curriculum vitae;

5. a letter from Dr. Stuart J. Nathan, a clinical psychologist, describing some of the emotional issues Haskell experienced after being discharged from the Center, describing a brief conversation Dr. Nathan had had with the CEO of Seven Acres in November 2007, and explaining that Haskell has never expressed or exhibited any homicidal, suicidal or threatening behavior during their sessions;

6. Dr. Nathan's curriculum vitae;

7. a document entitled "Statement of Resident Rights" promulgated by

the Texas Department of Human Services; and

8. a document entitled "Physician's Progress Notes" that contains what appear to be hand written notes by Dr. Steiner concerning a visit by Haskell on October 10, 2007.

After they discovered that they had received a report served by Haskell, Defendants argued that Haskell "failed to serve an expert report on the issue of standard of care and breach of the standard of care." In the course of the hearings, Haskell asserted that the document entitled "Statement of Resident Rights" was meant to establish the applicable standard of care for his expert report. He further asserted that the documents established how being dismissed affected his health and that he was a resident at the Center. It is undisputed by the parties that nothing in the report addresses any breach by either defendant as to any standard of care.

Defendants in this matter urge us to determine that the report served by Haskell was so deficient as to not constitute a report. If we hold that Haskell's report falls into this category, then the 21–day deadline to object to the report was never triggered, and the trial court was required to dismiss Haskell's suit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (requiring claim against defendant who has not been timely served with expert report must be dismissed); *Scoresby,* 346 S.W.3d at 549 (defining minimum requirements for document to be considered expert report). If we hold that Haskell's report is not so deficient as to constitute no report at all, then any objections to the report have been waived and the trial court lacked the authority to dismiss Haskell's suit. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (providing 21–day deadline to object to deficient expert report); *Ogletree v. Matthews,* 262 S.W.3d 316, 322 (Tex.2007) (holding failure to object within 21–day

deadline waives objections and trial court must deny motion to dismiss).

If there are multiple defendants in a suit, the report must be sufficient as to each defendant individually. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a); *see also Rivenes v. Holden,* 257 S.W.3d 332, 336 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (holding if plaintiff does not serve report as to particular defendant, trial court must dismiss that defendant from suit). Accordingly, we will review the sufficiency of the report separately for each defendant.

**1. Sufficiency of the expert report as to Seven Acres**

■ The Texas Supreme Court recently addressed whether an expert report could be so deficient as to be considered no report at all and, if so, what qualifies as such a report. *Scoresby,* 346 S.W.3d at 549. It held that an expert report could be so deficient as to be considered no report at all. A report avoids falling into this category if "it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit." *Id.*

In *Scoresby,* a minor underwent surgery to remove growths in his sinus cavity. *Id.* at 550. The plaintiff, the minor's father, asserted that, during the surgery, an incision was made too far into the child's brain, lacerating a blood vessel, requiring further surgery, and resulting in brain damage and partial paralysis. *Id.* The report was prepared by a neurologist. *Id.* at 557. The report "described the injury to [the child's] brain, ascribed it to the Physician's breach of the standards of care, and stated that their breach caused [the child's] partial paralysis and other lingering debilities." *Id.* The Texas Supreme Court held that the report was deficient, particularly because "it did not state the

standard of care but only implied that it was inconsistent with the Physician's conduct." *Id.* Nevertheless, the court held that the report "easily meets the standard" established in that opinion because "there is no question that in [the neurologist's] opinion, [the plaintiff's] claim against the Physicians has merit." *Id.*

In contrast, the plaintiff in *Velandia* alleged that the defendant doctor "negligently extracted a tooth, resulting in serious personal injuries . . . ." *Velandia v. Contreras,* 359 S.W.3d 674, 675 (Tex.App.-Houston [14th Dist.] 2011, no pet.). After the defendant answered the suit, the plaintiff served him with some documents "described in a cover letter as 'reports, dental records[,] and notes from two dentists' identified as expert witnesses." *Id.* The documents consisted of (1) a consultation letter by one doctor; (2) an x-ray; (3) a page of progress notes by another doctor; and (4) "related documents including a financial policy written in Spanish." *Id.*

Much like this case, the defendant filed a motion to dismiss after the 120–day deadline, making no mention of the documents it had received. *Id.* The plaintiff responded, identifying those documents as its expert report. *Id.* The defendant responded asserting that the documents amounted to no report at all. *Id.*

Relying on *Scoresby,* the court in *Velandia* held that the documents did not constitute an expert report. *Id.* at 678. Specifically, the court held:

Here, although the purported report of Dr. Lopez was timely served, it fails to include any opinion or statement that Contreras's claim has merit. Further, assuming Dr. Lopez is qualified to provide an opinion, his consultation letter satisfies none of the statutory requirements—he offers no standard of care applicable to Dr. Velandia, he provides no explanation of how Dr. Velandia failed to meet any standard of care, and

he identifies no causal relationship between any failure on Dr. Velandia's part and Contreras's injury, harm, or damages.

*Id.*

The analysis in *Velandia* applies here. Nowhere in the documents submitted by Haskell is there an opinion by any expert asserting that Haskell's claim has merit. All three of the doctors included in the expert report describe actions taken by Seven Acres that form the basis of Haskell's suit. But none claims that those actions were malpractice that caused Haskell an injury. Similarly, while each of the doctors describe some "harm" that Haskell has suffered after being discharged from the Center, none of them ties this alleged injury to any wrongful action by Seven Acres. Most significantly, there is nothing in Haskell's report regarding any failure by Seven Acres to meet the applicable standard of care. Without such an assertion by an individual with expertise, there can be no showing that Haskell's claim has merit. *See Scoresby,* 346 S.W.3d at 549.

We hold that Haskell's documents fail to contain "a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit." Id. Accordingly, they do not constitute an expert report. *Id.* No other report was filed by Haskell within the 120–day deadline. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). As a result, the trial court was required to dismiss his claims against Seven Acres. *Id.* § 74.351(b)(2).

**2. Sufficiency of the expert report as to Mason**

■ Mason works as a nurse at the Center. Other than being named as one of the intended recipients of the report, her name does not appear anywhere in the report. There is no description of any

action she took, much less any action she took in relation to the matter in dispute. While the statement of resident rights provides some indication of the standard of care owed by a nursing facility, there is nothing in the report that applied this standard of care to Mason. Because there is nothing in the report that links Mason to Haskell's discharge from the Center, there is nothing to link the report's claimed causation to her either.

Any expert report must be sufficient as to each defendant individually. *Id.* § 74.351(a); *see also Rivenes*, 257 S.W.3d at 336. In *Rivenes*, the plaintiffs served one report prepared by a doctor as the report for each of the defendants. 257 S.W.3d at 334. Rivenes did not object to the report within 21 days but subsequently argued that the report only addressed the negligence of two other defendants and not him. *Id.* at 335, 337. The court of appeals agreed, holding that the report was not a report as to Rivenes, that Rivenes's obligation to object within 21 days was never triggered, and that the trial court was required to dismiss Rivenes from the suit. *Id.* at 338–39.

The same conclusion is compelled in this case. Haskell's report is not a report as to Mason. Accordingly, the trial court correctly dismissed all claims against her. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b)(2).

We overrule Haskell's first issue.

### 30–Day Extension to Cure

In his second issue, Haskell argues that the trial court should have allowed him 30 days to cure any deficiencies in the report. If a report is found to be deficient, the trial court may grant one 30–day extension to cure the deficiencies. *Id.* § 74.351(c). This rule does not apply as to either defendant in this case, however. Seven Acres did not object within 21 days of service of the report. Accordingly, any deficiencies

in the report that Haskell would be required to cure as to Seven Acres have been waived. *Id.* § 74.351(a).

In contrast, if no report is served as to a specific defendant, then that defendant's obligation to object to the report is never triggered. *Rivenes*, 257 S.W.3d at 338; *see also Scoresby*, 346 S.W.3d at 557 (holding 30–day extension may be granted if report is timely served, contains opinion of individual with expertise that claim has merit, and defendant's conduct is implicated). A plaintiff is not entitled to a 30–day extension to cure when no report is served. *Ogletree*, 262 S.W.3d at 319–20. Accordingly, the trial court lacked the authority to grant Haskell a 30–day extension to cure any deficiencies as to Mason.

We overrule appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.