**Opinion issued December 20, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00393-CV

————————————

## MEMORIAL HERMANN SURGERY CENTER TEXAS MEDICAL CENTER, L.L.P., Appellant

## V.

## LESTER SMITH AND PATRICIA NELSON-SMITH, Appellees

On Appeal from the 127th District Court
Harris County, Texas
Trial Court Case No. 2011-18010

## MEMORANDUM OPINION

This is an interlocutory appeal from a trial court's order ruling that a medical expert report is sufficient to proceed with a medical malpractice lawsuit. Lester Smith and Patricia Nelson-Smith sue Memorial Hermann Surgery Center Texas

Medical Center, L.L.P. ("MHSC"), claiming medical malpractice arising out of laser surgery performed on Lester Smith. On appeal, MHSC contends that the trial court erred in refusing to dismiss the suit against it, because (1) the Smiths did not timely serve their initial expert report and (2) the Smiths' amended report does not sufficiently address the statutorily required elements. We conclude that the Smiths' timely filed report adequately implicates MHSC. We further conclude that the Smiths' amended report represents a good-faith effort to comply with the statutory requirements and therefore is sufficient to permit this suit to proceed. Accordingly, we affirm.

## Background

In March 2011, the Smiths sued Dr. Gerald Frankel and Dr. Frances Alba, contending that they negligently performed laser surgery on Lester Smith, causing him to sustain burn injuries. The Smiths also sued Memorial Hermann Hospital System, asserting that it was directly liable for Lester's injuries and vicariously liable for the conduct of its employees present in the operating room.

The Smiths amended their petition in May 2011 to include claims against Memorial Hermann Hospital System, d/b/a Memorial Hermann-Texas Medical Center, Memorial Hermann Surgical Center Texas Medical Center, L.L.P., and United Surgical Partners International, Inc. and against Memorial Hermann Surgery Center Texas Medical Center, L.L.P. and United Surgical Partners

2

International, Inc., individually. Under a heading entitled "Negligence," the Smiths alleged that MHSC was directly liable "by its staff failing to properly monitor the location of the laser tip and cord in order to avoid them coming into contact [with the patient] . . . and by its staff failing to determine that the fiber optic light was off before allowing the scope to come into contact [with the patient]." Under a separate heading, the Smiths alleged that MHSC was vicariously liable for the acts or omissions of its staff.

MHSC answered with a general denial, and it specifically denied that it was vicariously liable for the acts or omissions of Dr. Alba and Dr. Frankel, because neither doctor was its employee or agent. MHSC also specially excepted to the Smiths' petition, contending that the Smiths had failed to identify the specific MHSC staff members for whom the Smiths' sought to hold MHSC liable. Nothing in the record reveals that the trial court ruled on MHSC's special exception.

In July 2011, the Smiths served an expert report by Dr. Michael Brodherson, pursuant to section 74.351 of the Civil Practice and Remedies Code. The proffered report generally references Memorial Hermann Hospital and its staff. Relevant to this appeal, the report provides:

When a procedure . . . is being done in a hospital setting, the hospital provides hospital personnel to provide ancillary services to the operating team. One of the duties of the participants in the surgical procedure, including the hospital staff present in the operating room, is to monitor the laser unit and, in particular, to monitor the position of the laser's tip and the fiberoptic cord to be sure that they do not come in contact with the patient other than in the intended area involved in the procedure. Failure on the part of the hospital staff to perform this function is a failure to meet the standard of care required of the hospital staff to prevent burns to the patient . . . the hospital staff of Memorial Herman[n] Hospital present in the operating suit[e] during Lester Smith's treatment . . . fell below the accepted standard of care for operating room nurses and personnel . . . , in failing to properly monitor the location of the laser tip . . . and in failing to determine that the fiberoptic light was off before allowing the scope to come into contact with [the affected area] . . . such breaches were a proximate cause of the burns and resulting damages sustained by Lester Smith. If the laser had been properly monitored, it would not have come in contact with Lester Smith's body and he would not have been burned.

After receiving Dr. Brodherson's report, MHSC moved to dismiss the claims against it. MHSC contended that the report did not implicate either MHSC's conduct or the conduct of any of its employees, and thus constituted "no report" as to MHSC. MHSC also challenged the report on the basis that it did not identify the standard of care applicable to MHSC or how MHSC breached the standard of care.

Before the trial court heard MHSC's motion to dismiss, the Smiths served MHSC with requests for disclosure and interrogatories. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(s)(1) (West 2011) (permitting written discovery related to claimant's health care before claimant serves expert report). In response to an interrogatory asking MHSC to identify any persons present during Lester Smith's

4

operation, MHSC named Brenda DeLeon and Felicia Hyde-Ross and admitted that both nurses were its employees.

In December 2011, the trial court heard MHSC's motion to dismiss. The trial court did not rule on the motion, but granted the Smiths a thirty-day extension to cure their report. The amended report contains a one-page addendum, but is otherwise identical to the initial report. The addendum provides:

> In my professional opinion, based on the standards described in my report of January 18, 2011, the hospital staff of Memorial Herman[n] Surgery Center Texas Medical Center L.L.P. present in the operating room during Lester Smith's procedure breached the standard of care for operating room nurses and personnel in a hospital operating suite in each of the ways set out [in the previous report] and such breaches were a proximate cause of the burns and resulting damages sustained by Lester Smith. The staff persons include but are not limited to Brenda DeLeon, R.N. (circulator) and Felicia Hyde-Ross (scrub tech). If the laser had been properly monitored, it would not have come in contact with Lester Smith's body and he would not have been burned. [Memorial] and its administrative personnel are responsible for training and the nursing and other personnel in the safe use of lasers and the hazards associated therewith.

MHSC again moved to dismiss the claims brought against it. The trial court denied MHSC's motion.

## Discussion

### 1. Standard of Review

We review all rulings related to section 74.351 of the Texas Civil Practice and Remedies Code under an abuse of discretion standard. *Jelinek v. Casas*, 328 S.W.3d 526, 538–39 (Tex. 2010); *Am. Transitional Care Ctrs. of Tex., Inc. v.*

5

*Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). Although we defer to the trial court's factual determinations, we review questions of law de novo. *Haskell v. Seven Acres Jewish Senior Care Servs.*, *Inc.*, 363 S.W.3d 754, 757 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Poland v. Ott*, 278 S.W.3d 39, 45 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). An abuse of discretion occurs if the trial court fails to correctly apply the law to the facts. *Haskell*, 363 S.W.3d at 757 (citing *Petty v. Churner*, 310 S.W.3d 131, 134 (Tex. App.—Dallas 2010, no pet.)).

In reviewing whether an expert report complies with section 74.351, we evaluate whether the report "represents a good-faith effort" to comply with the statute. *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 221 (Tex. App.— Houston [1st Dist.] 2003, pet. denied). A compliant report must provide enough information to (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). In making this determination, we review the information contained within the four corners of the report. *Id.* at 53.

## 2. The Smiths' Initial Report

MHSC first claims that the Smiths' initial expert report—the only report served within the 120-day deadline—is so defective as to constitute "no report" against it, thereby mandating dismissal under section 74.351(b). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011). According to MHSC, the proffered report does not implicate MHSC or any MHSC employee. When the trial court ruled on MHSC's first motion to dismiss, however, the Smiths' live pleadings called into question the conduct of the MHSC's staff present in the operating room and alleged that MHSC was vicariously liable for that conduct. Accordingly, we analyze Dr. Broherson's initial report in light of the Smiths' claim that MHSC is vicariously liable for its employees' negligence.

The Medical Liability Act provides that a claimant in a health care liability claim shall serve an expert report showing that the claim has merit within 120 days of the date the suit was filed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). The Act specifies the requirements for an adequate report and mandates that the report shall demonstrate "an objective good faith effort to comply with the statutory requirements." *Id.* § 74.351(l). The Act grants the trial court discretion to grant a plaintiff who timely serves a report one thirty-day extension to cure its deficiencies. *Id.* § 74.351(c). But if no report is served as to a particular defendant by the 120-day deadline, a trial court shall dismiss the claims

against that defendant and may not authorize a thirty-day extension. *Id.* § 74.351(b); *see Scoresby v. Santillan*, 346 S.W.3d 546, 553-54 (Tex. 2011).

Thus, if we conclude that the Smiths' initial report is "no report," then the trial court had no discretion but to dismiss the Smiths' suit against MHSC. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011) (requiring that claim against defendant who has not been timely served with an expert report shall be dismissed); *see also Haskell*, 363 S.W.3d at 761. If, however, the initial report meets the minimum requirements, then the trial court could grant an extension to the Smiths to cure its deficiencies; we may not review the merits of that ruling. *See Scoresby*, 346 S.W.3d at 549 (distinguishing "deficient report" cases from "no report" cases and concluding that dismissal is mandatory if report does not meet minimum requirements); *see also Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007) (court lacks jurisdiction to review ruling on motion to dismiss where plaintiff timely serves report and trial court grants thirty-day extension to cure its defects); TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(9) (West Supp. 2012), 74.351(a), (c).

A report meets the minimum requirements—and shall be considered a report—if it is timely served, contains a statement of opinion by an expert indicating that the claim has merit, and implicates the defendant's conduct. *Id.*; *Laredo Tex. Hosp. Co. v. Gonzales*, 363 S.W.3d 255, 257 (Tex. App—San Antonio

8

2012, no pet.) (describing minimum requirements announced in *Scoresby* as three-part test).

In negligence suits based on direct liability, Texas courts have concluded that a report is no report at all when it lacks all substantive content—i.e., the report does not name the defendant, set forth a standard of care applicable to the defendant, or identify how the defendant breached the standard of care. *See e.g., Haskell*, 363 S.W.3d at 760–61 (report that did not name defendant, apply any standard of care to her, or identify any negligent conduct on her part was deemed "no report" in direct-liability case). When a party's alleged health-care liability is vicarious, the analysis similarly focuses on whether the report implicates a defendant's conduct, but a report meets the minimum level of analysis to be a "report"—albeit not, perhaps, an adequate one—so long as it implicates the actions of that party's agents or employees. *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008).

The Smiths' initial report refers to Memorial Hermann Hospital and its staff but does not separately name MHSC or any of its employees. Although the report does not name MHSC as a separate entity from Memorial Hermann Hospital, it can be reasonably construed to implicate MHSC (a subsidiary of Memorial Hermann Hospital System). It provides that Dr. Brodherson reviewed, among other things, Lester Smith's medical records from MHSC. The report sets forth a standard of

9

care that applies to a health care provider like MHSC, providing that hospital personnel supply ancillary services to surgeons during operations and that the standard of care requires the operating team to monitor laser units and, in particular, to monitor the position of the laser's tip and the fiber optic cord to ensure that the laser does not contact any portion of patient's body that is not designated for treatment. The report concludes that the hospital staff of Memorial Hermann Hospital fell below the standard of care in failing to properly monitor the location of the laser and that this breach caused Lester's injuries. The report contains some information to notify MHSC that the Smiths sought to hold it vicariously liable for the conduct of its personnel present in the operating suite.

Citing *Hillcrest Baptist Medical Center v. Payne*, MHSC maintains that the report is wholly flawed because it does not expressly name MHSC (an out-patient surgery center with its own personnel) as an entity distinct from Memorial Hermann Hospital System. *See* No. 10-11-00191-CV, 2011 WL 5830469 (Tex. App.—Waco Nov. 16, 2011, pet. denied) (mem. op., not designated for publication). We do not read *Hillcrest Baptist* to require dismissal in this case. In *Hillcrest Baptist*, the Waco Court of Appeals faced an expert report that expressly named a hospital subsidiary as a negligent party, but did not name the hospital system. *Id.* at *11–12. The court concluded that the report did not adequately address the hospital system because, although the report named particular nurses

10

whose treatment was alleged to be negligent, the report did not attribute the nurses' actions to the hospital system as opposed to its subsidiary. *Id.* It held the report to be deficient.

This case is distinguishable from *Hillcrest Baptist*, because that case did not address whether the defect that the court noted was a curable one—it was a defect present in both the initial and the final reports. The Smiths' initial report provides that Dr. Brodherson reviewed Lester Smith's patient records from MHSC, names Memorial Hermann Hospital generally, sets forth a standard of care applicable to MHSC, and concludes that Memorial Hermann's staff failed to meet the applicable standard of care. The purpose of an expert report is to notify a defendant of the specific conduct the plaintiff has called into question and provide a basis for the trial court to conclude that the claims have merit. *Scoresby*, 346 S.W.3d at 556. Dr. Brodherson's report satisfies these criteria, at least to satisfy the minimal requirement for a curable, albeit deficient, report.

This case is different from those in which Texas courts found a proffered report wholly lacking in substantive content. *See e.g., Haskell*, 363 S.W.3d at 760–61 (report that did not name nurse defendant, apply any standard of care or identify any negligent conduct on her part deemed "no report"); *Sinha v. Thurston*, 373 S.W.3d 795, 800–01 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (same); *Laredo Tex. Hosp. Co.*, 363 S.W.3d at 258–59 (conclusory report offering no

11

mention of any health care defendant or any applicable standard of care); *Rivenes*, 257 S.W.3d at 338–39; *Velandia*, 359 S.W.3d at 678–79 (consultation letter). We conclude that the initial report's failure to cite MHSC as a corporate entity separate from Memorial Hermann Hospital is a curable defect. *See Scoresby*, 346 S.W.3d at 556; *see also Gardner*, 274 S.W.3d at 571–72; *Ogletree*, 262 S.W.3d at 323 (Willitte, J. concurring). Because we hold that Dr. Brodherson's initial report meets *Scoresby*'s minimum requirements, allowing the trial court to grant an extension to cure its deficiencies, we turn to whether the trial court erred in denying MHSC's second motion to dismiss, filed in response to Dr. Brodherson's amended report.

### 3. Dr. Brodherson's Amended Report

Section 74.351 requires a plaintiff in a health-care liability suit to serve each health-care provider defendant with an expert report that provides a fair summary of the expert's opinions regarding: (1) the applicable standards of care; (2) the manner in which the care rendered failed to meet the standards; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Gray v. CHCA Bayshore, L .P.*, 189 S.W.3d 855, 858–59 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A report need not marshal all of the plaintiff's proof; it must represent a good-faith effort to comply with the statute by including the expert's opinions on the three statutory

12

elements—standard of care, breach, and causation. *Palacios*, 46 S.W.3d at 878; *Gray*, 189 S.W.3d at 859. The report must provide enough information to fulfill two purposes: first, it must inform the defendant of the specific conduct the plaintiff has called into question, and, second, it must provide a basis for the trial court to conclude that the claims have merit. *Scoresby*, 346 S.W.3d at 556. A conclusory report does not fulfill these two purposes. *Id.*

Dr. Brodherson's report addresses each of the statutorily required elements. The report sets forth a standard of care applicable to MHSC, observing that hospitals provide services and personnel during out-patient procedures, and the standard of care required MHSC to train its personnel to properly monitor the laser. The report continues, providing that the standard of care required MHSC personnel to monitor the laser unit and, in particular, the position of the laser tip and fiberoptic cord to prevent any contact with the patient. The report names two MHSC employees present in the operating suite during Lester Smith's operation and concludes that they breached the standard of care by failing to properly monitor and control the position of the laser. The report casually links MHSC's alleged negligence to Lester Smith's injuries, concluding that no other heat source was present during the procedure that would have caused burn injuries. The expert report therefore addresses each statutory element and links the expert's conclusions to the facts upon which those conclusions rest. *See Jelinek*, 328

13

S.W.3d at 539. We conclude that the report represents a good-faith effort to comply with the statute. Accordingly, the trial court properly denied MHSC's motion to dismiss under section 74.351.

## Conclusion

We conclude that the first report provides a sufficient basis for MHSC to conclude that it may be liable as an employer. We further conclude that the Smiths' amended report represents a good-faith effort to comply with the statutory requirements. We therefore affirm the trial court's order.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.