**Opinion issued October 1, 2013**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-13-00265-CV

_____

### JANICE BABIN, D.D.S., Appellant

### V.

### SCOTT HAYNIE, INDIVIDUALLY AND AS NEXT FRIEND OF C.H., A MINOR, Appellee

---

### On Appeal from the 189th District Court
### Harris County, Texas
### Trial Court Case No. 2012-42932

---

### MEMORANDUM OPINION

In this interlocutory appeal,[1] appellant, Dr. Janice Babin, D.D.S., challenges

the trial court's order denying her motion to dismiss the health care liability claim[2]

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon Supp. 2012).

made against her by appellee, Scott Haynie, individually and as next friend of C.H., a minor, in his suit for negligence. In her sole issue, Babin contends that the trial court erred in not dismissing Haynie's claim.

We affirm.

## Background

In his original petition, Haynie alleged that his son "came under the care of Janice Babin, D.D.S. in May 2010," when he was fourteen years old. Dr. Babin performed a root canal on the child's upper right first molar, tooth number three, and placed a "low quality stainless steel crown on the tooth that did not fit and was wholly inadequate for its purpose." The child experienced pain in the opposing lower right first molar, tooth number thirty, and returned to Babin who removed "a significant amount of enamel" from the lower right first molar, a tooth that was in "pristine condition." The child's occlusion continued to be incorrect so Babin removed even more enamel from the lower right first molar in a subsequent visit.

Haynie then took the child to see Dr. Kent Lawson, D.D.S., who performed dental procedures in an attempt to alleviate the pain the child still experienced in tooth number thirty. Because those procedures were unsuccessful in eliminating the tooth's sensitivity, Lawson recommended replacement of the stainless steel

---

[2] *See id.* § 74.001(a)(13) (Vernon Supp. 2012).

2

crown with a properly-fitting crown on tooth number three, and placement of a crown on tooth number thirty, the tooth from which enamel had been removed.

Haynie alleges that Dr. Babin, in her treatment of his son, specifically breached the standard of care of a reasonably prudent dentist by:

1. Failing to treat [the child] properly;

2. Failing to provide the dental care reasonably required for [the child's] condition;

3. Allowing unqualified or negligent employees or assistants to perform or assist in dental procedures on [the child]; and

4. Performing unnecessary treatment on [the child].[3]

In November 2012, Haynie served Dr. Babin with an expert report authored by Dr. Lawson. In his expert report, Lawson notes that he received his Doctorate of Dental Surgery degree in 1980, is a member of a number of dental organizations, and has served on a variety of committees in those organizations. He states that, over his thirty-year practice, he has "performed many endodontic and restorative procedures, including crowns, onlays, and resin restorations" on patients of all ages.

In his report, Dr. Lawson explains that he began to see the child as a patient in 2002 and treated him several times until 2007. When he examined the child after his visit to Dr. Babin, Lawson could see that endodontic treatment had been

_____

[3] Haynie also alleged that Dr. Babin told him that the child needed several fillings that were not needed.

3

done on the child's upper right first molar, tooth number three, and a stainless steel crown had been placed on that tooth. He noted that enamel had been removed from another tooth, tooth number thirty, to make room for the stainless steel crown. And Lawson determined that the stainless steel crown was "clearly too large for placement in that area" and Babin "did not want to adjust a hole in the crown," so she removed enamel from the opposing tooth instead. Lawson included in his report his conclusions that the child's sensitivity on tooth number thirty resulted from the removal of protective enamel "adjusted off that tooth to allow the [stainless steel crown] on tooth [number three] to fit his occlusion." He opines that Babin's removal of the enamel made the "remaining portion of the tooth . . . very sensitive to chewing."

Dr. Lawson also details the corrective procedures that he attempted to reduce the sensitivity on the child's tooth. He opines that because the corrective procedures had not reduced the sensitivity in tooth number thirty, it is a "reasonable dental probability" that the child needs to have a crown placed on tooth number thirty as well as a properly-fitted crown to replace the "too large" stainless steel crown originally placed by Dr. Babin. And the crowns will need to be replaced "on a seven year basis" due to "normal wear and tissue changes."

Dr. Babin moved to dismiss the suit on the basis that Haynie "failed to timely serve a qualifying expert report" within 120 days of filing suit. Babin

4

argued that Haynie's claim should be dismissed because Dr. Lawson's report: "fails to meet the minimum threshold to qualify as an expert report" and constitutes "no report at all." Specifically, Babin argued that Lawson's report "fails to opine as to the standard of care, any breach thereof, or any injury caused thereby" and is generally inadequate because it "does not contain any statement of opinion indicating that Mr. Haynie's claim against Dr. Babin has merit." The trial court denied Babin's motion to dismiss.

## Standard of Review

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Harris Cnty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

5

## Sufficiency of Expert Report

In her sole issue, Dr. Babin argues that the trial court erred in denying her motion to dismiss and was required to dismiss Haynie's claim because Dr. Lawson's expert report fails to "meet the minimum qualifications for a statutory expert report" and is "so deficient" that it constitutes "no report at all." *See Scoresby v. Santillan*, 346 S.W.3d 546 (Tex. 2011). Haynie argues that Dr. Lawson's report is sufficient and meets the Texas Supreme Court's standard articulated in *Scoresby* because it "informs [Babin] of the specific conduct [Haynie] has called into question" and "provide[s] a basis for the trial court to conclude that the claims have merit."

A health care liability claimant must timely provide each defendant health care provider with an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon 2011); *Gray*, 189 S.W.3d at 858. The expert report must provide a "fair summary" of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

If a defendant files a motion to dismiss challenging the adequacy of the claimant's expert report, a trial court shall grant the motion to dismiss only if it

6

appears to the court, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report. *Id*. § 74.351(1); *Scoresby*, 346 S.W.3d at 555–56. In setting out the expert's opinions, the report must provide enough information to fulfill two purposes to constitute a good faith effort. *Palacios*, 46 S.W.3d at 879. First, the report must inform the defendant of the specific conduct the claimant has called into question. *Id*. Second, the report must provide a basis for the trial court to conclude that the claim has merit. *Id*. As the Texas Supreme Court explained in *Scoresby*, while a document may not be completely "devoid of substantive content," it will qualify "as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit" and implicates the defendant's conduct. 346 S.W.3d at 549.

No particular words or formality are required and the claimant need not marshal all his proof, although the report must contain more than bare conclusions and address all of the statutory elements without the necessity of supplying omissions by inference. *See id.* at 556; *Palacios*, 46 S.W.3d at 878; *Gray*, 189 S.W.3d at 859. A claimant need not present evidence in the report as if he were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. Furthermore, the report may be informal in that the information in the report need not meet the same

7

requirements as the evidence offered in a summary-judgment proceeding or trial. *Id*.

Dr. Babin asserts that Dr. Lawson's report cannot qualify as an expert report because it "fails to opine" as to the standard of care, a breach of that standard, or an injury caused by that breach. "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given." *Id*. at 880. Lawson explains the following in his report:

> The [stainless steel crown] cemented on tooth [number three] is clearly too large for placement in that area and [the child's] dentist (or assistant) did not want to adjust a hole in the crown, so they just removed enamel from the buccal cusps of his lower right molar. His occlusion was not correct and he had to have even more enamel removed on his second visit and this further increased his sensitivity.

Lawson does not use the phrase "standard of care" in describing Babin's conduct. However, particular words or formality are not required. *See Scoresby*, 346 S.W.3d at 556.

Identifying the standard of care in a health care liability claim is critical: whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently. *Palacios*, 46 S.W.3d at 880. An expert report must "provide[] a fair summary of the expert's opinion as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician or health care

8

provider failed to meet the standards." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). "[A] 'fair summary must set out what care was expected, but not given' and how that caused the injury." *Spitzer v. Berry*, 247 S.W.3d 747, 750 (Tex. App.—Tyler 2008, pet. denied) (quoting *Palacios*, 46 S.W.3d at 880). Dr. Lawson's report constitutes a good faith effort to comply with the statutory requirements. In his report, Lawson states that the stainless steel crown placed by Dr. Babin was "clearly too large" and she "did not want to adjust a hole in the crown," instead choosing to remove enamel from the opposing tooth. This statement constitutes a good faith effort by Lawson to establish an applicable standard of care and the manner in which that standard was breached. The pertinent standard of care identified by Lawson required Babin to place the correct-sized crown on tooth number three rather than a "too large" crown that required that enamel be removed from the opposing tooth to make the crown fit and adjust the occlusion. He further identifies Babin's failure to comply with the standard of care by placing a crown on the child's tooth number three that was "clearly too large for placement," and he states his "opinion that the [stainless steel crown] on tooth #3 was too large for the space."

An expert report must provide a fair summary of the expert's opinions regarding the causal relationship between the failure of the health care provider to provide care in accord with the pertinent standard of care and the injury, harm, or

9

damages claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Dr. Lawson explains in his report that the sensitivity the child experienced in tooth number thirty resulted from Dr. Babin's removal of the enamel from that tooth. Because Babin did not "adjust a hole in the crown" placed on tooth number three, the sensitivity was "further increased" when additional enamel was removed during a subsequent visit. Lawson also notes that because the child's "occulsion was not correct," "he had to have even more enamel removed on his second visit," which caused the child's symptom of sensitivity to increase even more in tooth number thirty. Thus, leading to the "reasonable dental probability" that a new crown was required to treat the sensitivity and causally linking Babin's alleged negligent care to the child's injury. Lawson's statement that the occlusion was incorrect after the procedure, resulting in the removal of more enamel and further increased sensitivity, is indicative of a causal relationship between Babin's failure to adhere to the standard of care and the resulting injury to the child. Lawson's report sufficiently describes Babin's specific conduct and informs her of the behavior in question and allowed the trial court to determine whether Haynie's allegations have merit. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013). Accordingly, we hold that the trial court did not abuse its discretion in concluding that Lawson's report adequately addressed the elements of the

standard of care and breach against Babin as it relates to the resulting sensitivity and necessity of two new crowns for the child.

In her argument that Dr. Lawson's report is inadequate under *Scoresby*, Dr. Babin relies on *Velandia v. Contreras*, 359 S.W.3d 674 (Tex. App.—Houston [14th Dist.] 2011, no pet.) and *Haskell v. Seven Acres Jewish Senior Care Servs, Inc.*, 363 S.W.3d 754 (Tex. App.—Houston [1st Dist.] 2012, no pet.). In *Velandia*, however, the documents put forth by the plaintiff as his expert report consisted of a doctor's consultation letter, an x-ray, a page of progress notes from another doctor, and "related documents including a financial policy written in Spanish." 359 S.W.3d at 675. Dr. Lawson's report is much more than a "consultation letter" and includes information that is not included in the documentation provided in *Velandia*, such as an assertion as to what procedure Haynie alleges that Babin preformed incorrectly, what procedure should have been performed, how Babin's treatment caused injury to the child, and information regarding necessary corrective measures.

In *Haskell*, the plaintiff served a number of documents that he asserted were in compliance with the statutory requirements of section 74.351. 363 S.W.3d at 758. The documents served by Haskell included: a physician's letter concerning his post-discharge treatment; physicians' letters regarding his medical condition in 2007 and 2008; a physician letter describing emotional issues Haskell experienced

11

post-discharge as well as handwritten progress notes from the same physician; a "Statement of Resident Rights" promulgated by the Texas Department of Human Services; and the curriculum vitae from three doctors. *Id*. at 758–59. This Court concluded that none of the documents submitted by Haskell included an expert opinion that his claim had merit. *Id*. at 760. Although the documents "describe[d] actions taken by Seven Acres," they did not state that the actions "were malpractice that caused Haskell an injury" or "tie[d] th[e] alleged injury to any wrongful action taken by Seven Acres." *Id.* In contrast, Dr. Lawson's report does more than merely describe the actions taken by Dr. Babin. Lawson's report "identif[ies] the manner in which proper treatment should have taken place." *See Palacios*, 46 S.W.3d at 880. And Lawson attributes the child's symptoms and injury to the allegedly deficient care provided by Babin. Thus, his report is readily distinguishable from the documents presented in *Haskell*, and Lawson's report easily meets the *Scoresby* standard because "there is no question that in [Lawson's] opinion, [Haynie's] claims against [Babin] have merit." *See Scoresby*, 346 S.W.3d at 557.

We conclude that Dr. Lawson, in his report, made a "good faith effort" to inform Dr. Babin of the specific conduct called into question, the standard of care that should have been followed, what she should have done differently, and the causal relationship between her failure to meet the pertinent standard of care and

12

the child's injury.  Accordingly, we hold that the trial court did not err in denying Babin's motion to dismiss Haynie's health care liability claim on the ground that Lawson's report cannot qualify as an expert report because it "fails to opine" as to the standard of care, breach of the standard, and an injury caused by the breach.

We overrule Dr. Babin's sole issue.

## Conclusion

We affirm the order of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Brown.